S10A0276. DYER v. THE STATE.
S10A0709. ROZIER v. THE STATE.

(695 SE2d 15)

MELTON, Justice.

Following a jury trial at which they were co-defendants, Xavier Dyer[1] and Christopher Rozier[2] appeal their convictions for the murder of Rufus Tony Richardson.[3] For the reasons set forth below, we affirm in both cases.

In the light most favorable to the verdict, the record shows that, on or around January 29, 2007, Xavier Dyer, Christopher Rozier, Liberty Harris, and Rufus Tony Richardson were fraternizing at Harris' home, and some of them were smoking crack cocaine. Willie Dyer, who is not related to Xavier Dyer, was also there for part of the evening. Harris testified that, while there, she told Xavier Dyer and Rozier that she believed that Richardson was a "snitch," and she suggested that Xavier Dyer and Rozier place rat poison in Richardson's crack pipe to kill him. Xavier Dyer and Rozier did so, but it did not kill Richardson. Shortly thereafter, Xavier Dyer and Rozier left the house with Richardson, took him to a secluded area down Stewart Road, shot him, and left his body in some undergrowth. Willie Dyer left Harris' house at the same time, but he did so in a separate car from the others. After shooting Richardson, Xavier Dyer and Rozier returned to Harris' home and asked her if she wanted to see a dead body. When Harris asked who they were talking about,

---

[1] On April 6, 2007, Dyer was indicted for malice murder, two counts of felony murder, three counts of aggravated assault, sale of cocaine, and four counts of possession of a firearm during the commission of a crime. Following a jury trial, Dyer was found guilty on all counts on February 15, 2008. On May 20, 2008, Dyer was sentenced to life imprisonment for malice murder, twenty consecutive years for one count of aggravated assault, five consecutive years for one count of possession of a firearm, and thirty concurrent years for the sale of cocaine. The felony murder convictions were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining counts were merged for purposes of sentencing. Dyer filed a motion for new trial on February 21, 2008, and amended it on March 26, 2008, September 3, 2008, and September 24, 2008. The motion for new trial was denied on August 10, 2009, and this appeal was docketed on September 1, 2009 and submitted for decision on the briefs.

[2] On April 6, 2007, Rozier was indicted for malice murder, two counts of felony murder, three counts of aggravated assault, sale of cocaine, and four counts of possession of a firearm during the commission of a crime. Following a jury trial, Rozier was found guilty on all counts on February 15, 2008. On May 20, 2008, Rozier was sentenced to life imprisonment for malice murder, twenty consecutive years for one count of aggravated assault, five consecutive years for one count of possession of a firearm, and thirty concurrent years for the sale of cocaine. The felony murder convictions were vacated by operation of law, *Malcolm v. State*, supra, and the remaining counts were merged for purposes of sentencing. Rozier filed a motion for new trial on February 20, 2008, and amended it on September 19, 2008. The motion for new trial was denied on August 10, 2009, and this appeal was docketed on September 4, 2009 and orally argued on April 12, 2010.

[3] Because both of these cases arise from the same set of facts, they are consolidated herein for review.

Rozier told her that they had murdered Richardson. Later, Xavier Dyer and Rozier gave a handgun to Kendrick Eubanks and told him to hide it because "it had a body on it." Xavier Dyer and Rozier, however, later retrieved the gun, and it has never been found. Richardson's body was discovered with several gunshot wounds, and he was still in possession of a crack pipe which tested positive for rat poison. Shell casings from a .9mm weapon were found under and around Richardson's body.

In addition to this evidence, police discovered a hat owned by Richardson in Rozier's trash, and shell casings found in Rozier's yard had been fired from the same weapon used to kill Richardson. Also found in the yard were a grill and aluminum cans which had been shot with a firearm. Similar transaction evidence was also admitted at trial which showed that, approximately one month prior to Richardson's murder, Xavier Dyer and Rozier drove Erica Brookin and Eubanks down Stewart Road and told them that they were going to kill them. At the time, Xavier Dyer had a .9mm handgun, and Rozier had a shotgun.

This evidence was sufficient to enable the jury to find both Xavier Dyer and Rozier guilty of the crimes for which they were convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

## *Case No. S10A0276*

1. Xavier Dyer contends that the trial court incorrectly instructed the jury on the elements of simple assault. Specifically, Xavier Dyer argues that the trial court failed to charge the jury that simple assault requires an intention to commit a violent injury, and, as a result, the charges on felony murder and aggravated assault were also improper because they rely on the definition of simple assault. A review of the trial court's instructions, however, undercuts Xavier Dyer's contention. The trial court first instructed the jury: "An assault is an attempt to commit a violent injury to the person of another or an act which places another person in reasonable apprehension of receiving a violent injury." The trial court then explained further:

> To constitute an assault, actual injury to the other person need not be shown. It is only necessary that the evidence show beyond a reasonable doubt an intention to commit injury to another person, coupled with the apparent ability to commit that injury, or that the other person was intentionally placed in reasonable apprehension of immediately receiving a violent injury from the defendants.

Although the trial court should have referred to an intention to commit *violent* injury to another person in this second explanation, the charge, as a whole, shows that the jurors were correctly instructed as to the definition of simple assault moments before the trial court's slip of the tongue. Under these circumstances, the jury instructions were adequate. See, e.g., *Williams v. State*, 267 Ga. 771 (2) (a) (482 SE2d 288) (1997).

2. Xavier Dyer contends that the trial court improperly instructed the jury that each defendant could be convicted of murder even if he were not a party to the crime and were merely present. The record does not support his contention. The trial court instructed the jury:

> I charge you that if you find beyond a reasonable doubt that these defendants committed the homicide alleged in each of their respective bills of indictment at the time the defendant was engaged in the commission of a felony, aggravated assault, then you would be authorized to find these defendants guilty, one or all, of murder, whether the homicide was intended or otherwise.

Xavier Dyer contends that this instruction may have confused the jury into believing that all of the defendants could be convicted for murder regardless of intent if any one of them committed the crime. In other words, Xavier Dyer contends that the jury could have believed that mere presence was enough for a conviction. The jury charge as a whole, however, dispels this argument, as the trial court fully instructed the jury on the law of parties to a crime and emphasized that the guilt or innocence of each defendant had to be determined separately. Moreover, it appears that the jury properly understood the instructions of the trial court, as one of the defendants, Willie Dyer, was ultimately acquitted of all charges. Under these circumstances, there was no error. Id.

3. Xavier Dyer contends that the trial court improperly gave an instruction on sympathy which shifted the burden of proof to him and invaded the province of the jury. Again, we disagree. The trial court charged the jury:

> The law does not permit jurors in arriving at your verdict to be governed by sympathy or prejudice. You may not, therefore, render a verdict in this case based upon sympathy for either party or prejudice against any party. Any verdict that you return must be supported by the evidence produced at trial without in any way being affected by either sympathy or prejudice.

This instruction neither shifted the burden of proof nor invaded the province of the jury. The instruction properly informed the jury that they could not disregard evidence in favor of their sympathy or prejudice. See, e.g., *Heidler v. State*, 273 Ga. 54 (12) (537 SE2d 44) (2000); *Duggan v. State*, 225 Ga. App. 291 (3) (483 SE2d 373) (1997). Moreover, a review of the charge as a whole shows that the trial court thoroughly and correctly charged the jury with regard to the appropriate burden of proof. There was no error. See *Heidler*, supra.

4. Xavier Dyer argues that the trial court impermissibly restricted his examination into the potential bias of both Eubanks and Harris.

With regard to Eubanks, Xavier Dyer argues that the trial court violated the precepts of *State v. Vogleson*, 275 Ga. 637 (571 SE2d 752) (2002), by limiting his cross-examination of Eubanks concerning any potential deal he had with the State regarding pending felony cocaine possession charges. The record reveals, however, that Xavier Dyer was allowed to ask Eubanks whether he expected any deal from the State with regard to these charges, and he repeatedly indicated that he did not have any deals. Nonetheless, Xavier Dyer contends that he should have been allowed to ask Eubanks whether he believed that the State had reduced his charge at that time from a felony to a misdemeanor. Evidence was presented, however, that this was not the case, and further cross-examination of Eubanks by Rozier showed that, although Eubanks had asked the officers who arrested him whether he was being charged with a misdemeanor or a felony, he clearly understood that the State was not going to make any deals with him. Under these circumstances, Xavier Dyer was fully allowed to question Eubanks, and there was no error.

With regard to Harris, Xavier Dyer similarly claims that the trial court limited his cross-examination in contravention of *Vogleson*, supra. The record shows that Harris testified for the State pursuant to an immunity agreement, and, although the State had offered her a plea deal of ten years, Harris had rejected the deal. When cross-examining Harris about her immunity agreement, Xavier Dyer asked Harris: "[D]o you think it means that if you come in here and testify as the State wants you to that you might not go to prison for the rest of your life? . . . Do you believe that you are going to prison for the rest of your life?" Harris answered "no" to the first question and "yes" to the second. Then, when questioning Harris about her rejection of the ten-year plea deal, Xavier Dyer asked: "But [the State] offered you in exchange for your testimony ten years to serve not life in prison like everybody else is facing; is that right?" At this point, the State objected, but Harris nonetheless answered: "Well, I didn't kill nobody." The State then explained that it objected to Xavier Dyer's reference to the sentence that the defendants on trial

at the time could be facing, as that evidence was not relevant to the guilt portion of their trial. The judge did not rule on the objection at that point, but encouraged Xavier Dyer to find supporting case law. In further cross-examination, Xavier Dyer elicited an admission from Harris that she hoped that the State was going to help her as a result of her decision to testify.

Xavier Dyer now contends that the trial court erred by preventing him from asking Harris about her possible sentence of life imprisonment for her involvement in the crime. The record shows, however, that Xavier Dyer did effectively ask Harris about life in prison, that this evidence did reach the jury, and that Harris admitted on the stand that she was hoping to receive assistance from the State in exchange for her testimony. In light of this testimony, Xavier Dyer could show no harm, even if the question of error is pretermitted.

5. Xavier Dyer contends that the trial court erred by admitting certain hearsay statements from his co-defendants in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Specifically, Xavier Dyer contends that both Rozier's statements to Harris about shooting Richardson and his statements to Eubanks about hiding a gun "with a body on it" violate the *Bruton* rule. We cannot agree. Pursuant to OCGA § 24-3-5, statements made by a co-conspirator during the pendency of the criminal project, including the concealment phase, are admissible against all other co-conspirators. The statements in question qualify as such statements made by a co-conspirator. Therefore, the trial court properly admitted Rozier's statements.

Xavier Dyer also contends that a statement Willie Dyer made to police after his arrest violated *Bruton*. A review of Willie Dyer's statement, however, indicates that he did not say anything that implicated Xavier Dyer in the murder of Richardson. Willie Dyer stated only that he was present at Harris' home on the evening of January 29, 2007, when Harris, Rozier, and Xavier Dyer engaged in a private conversation. He further stated that he could not hear the conversation and that he did not know what it was about. This evidence, standing alone, does not implicate Xavier Dyer, and, as a result, there was no *Bruton* error. *Moss v. State*, 275 Ga. 96 (2) (561 SE2d 382) (2002).

6. Xavier Dyer argues that the trial court erred by refusing to grant his motion for a mistrial after Agent Johnston, a witness for the State, improperly commented on his post-arrest silence. The record shows that, when Agent Johnston was being asked about a statement made to him by Willie Dyer, he mistakenly attributed the statement to Xavier Dyer. Xavier Dyer objected, and the trial court instructed him that he could clear up the error on cross simply by

asking if Xavier Dyer ever made a statement. At that point, Xavier Dyer conceded and told the trial court: "I think you are right." Then, on cross-examination, Xavier Dyer elicited testimony from Agent Johnston that he had simply made a mistake and that Willie Dyer, not Xavier Dyer, had made the statement.

As an initial matter, Xavier Dyer has waived his contention that any error occurred by acquiescing in the trial court's ruling. See *Compton v. State*, 281 Ga. 45 (2) (635 SE2d 766) (2006) (acquiescence deprives a defendant of the right to complain on appeal). Moreover, even if Xavier Dyer's argument had been preserved, it would lack merit.

> Certainly, the fact that a defendant has exercised the right to remain silent is not to be used against the defendant at trial. However, an improper comment on the defendant's silence does not necessarily require a reversal. The grant or denial of a mistrial is within the trial court's sound discretion, and the appellate court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial. Furthermore, testimony about the defendant remaining silent is not deemed to be prejudicial if it is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant. Indeed, to warrant a reversal of a defendant's conviction, the evidence of the election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury.

(Citations and punctuation omitted.) *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) 2008). In this case, Agent Johnston admitted that he mistakenly attributed a statement made by Willie Dyer to Xavier Dyer. There is no question that this was not intended to and did not have the effect of being probative on the guilt or innocence of Xavier Dyer. As a result, the trial court did not err in denying Xavier Dyer's motion for a mistrial. Id.

### Case No. S10A0709

7. Rozier contends that the trial court erred by admitting similar transaction evidence regarding his and Xavier Dyer's threatening behavior toward Eubanks and Brookin a month before Richardson's murder. Pretermitting whether this issue has been preserved, the

trial court did not err. The evidence that Rozier and Xavier Dyer threatened two victims in the same spot where Richardson was murdered just one month prior to that murder was properly admitted to show Rozier's intent, bent of mind, and course of conduct. *Smith v. State*, 268 Ga. 42 (3) (485 SE2d 189) (1997).

8. Rozier argues that the trial court erred by admitting into evidence both the shell casings and the aluminum cans with bullet holes found in the backyard of his home. The basis for Rozier's contention on appeal is that this evidence is generally irrelevant. Rozier, however, has not preserved this claim. Although he objected to this evidence below, he did not object based on the ground he now raises on appeal. *Arrington v. State*, 286 Ga. 335 (13) (a) (687 SE2d 438) (2009); *Helton v. State*, 268 Ga. App. 430, 432 (2) (602 SE2d 198) (2004) ("(A)n objection different from that made below may not be claimed on appeal; appeal is limited to the ground advanced below") (punctuation and footnote omitted). In any event, the shell casings which matched those found at the murder scene were relevant to the question of who committed the murder, and the aluminum cans were relevant to show the possibility that a gun had been fired at the premises and to counter Rozier's argument that the shell casings had been planted at the scene.

9. Finally, Rozier contends that the trial court erred by admitting a shotgun into evidence which had his fingerprint on it, arguing that this evidence was irrelevant and prejudicial. Rozier, however, did not object to this evidence when it was admitted at trial. Instead, Rozier objected for the first time in his motion for new trial. This was not a contemporaneous objection, and it did not preserve the issue for appellate review. *Martin v. State*, 281 Ga. 778 (2) (642 SE2d 837) (2007). Moreover, even if the issue had been preserved, evidence of the shotgun was directly relevant to the similar transaction in which Xavier Dyer and Rozier, who had a shotgun at the time, threatened Eubanks and Brookin.

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 3, 2010.

*Lee Sexton*, for appellant (case no. S10A0276).
*Joseph S. Key*, for appellant (case no. S10A0709).
*W. Kendall Wynne, Jr.*, District Attorney, *Melanie M. Bell*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Jason C. Fisher*, Assistant Attorney General, for appellee.