**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 9, 2013**

# In the Court of Appeals of Georgia

A13A0253. JANASIK v. THE STATE.

MCMILLIAN, Judge.

Andrew Michael Janasik appeals the trial court's denial of his motion for new trial after a jury convicted him of driving under the influence (less safe) (OCGA § 40-6-391 (a) (1)), failure to maintain lane (OCGA § 40-6-48), and a violation of Georgia's safety belt law (OCGA § 40-8-76.1 (b)).

Viewed in the light most favorable to the verdict,[1] the evidence at trial showed that on the night of November 15, 2007, Georgia State Trooper Stacey Collins was working in his marked police vehicle when he encountered Janasik at the intersection of Piedmont and Peachtree Roads in Fulton County. The first thing Collins noticed

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

was that Janasik was not wearing his seat belt. When the traffic light changed to green, Janasik pulled through the intersection, and Collins observed him weave across the yellow line into another lane, move back into his original lane, and then shortly after, change lanes into the other lane. Collins initiated a traffic stop based upon the failure to maintain lane and the seat belt violation. As the officer approached Janasik's car, he immediately noticed "the strong odor of alcoholic beverage" coming from inside the vehicle. Collins also observed that Janasik's eyes were bloodshot and watery, and his speech was slurred. When Collins asked if Janasik had anything to drink that night, he first replied "nothing," then he said "one" drink at dinner, and then he said "half," finally conceding that he had consumed "half a beer." As Janasik exited the car, he used the door to brace himself, and he was unsteady on his feet as he walked.

Collins offered to perform field sobriety evaluations, and the first test he administered was the horizontal gaze nystagmus ("HGN") test. Janasik exhibited six out of the six clues for impairment on that test. Collins then asked Janasik to perform the walk-and-turn test. Janasik initially agreed, but after he was unable to maintain the required stance, he told Collins that he could not perform the test because he had a swollen ankle. Janasik explained that he had hurt his ankle playing tennis,

basketball and soccer. Janasik also cited his ankle as a reason for not performing the one-leg stand test. Collins suggested that he perform the test by standing on his non-injured leg, but Janasik told him that it hurt his ankle too much to lift it in the air. Collins observed no outward indication of pain, however, when Janasik shifted on his feet several times that night. Janasik also refused to submit to the preliminary breath test. At that point, Collins placed Janasik under arrest based upon his opinion that Janasik was a less safe driver due to his consumption of alcohol. Collins then read Janasik the implied consent notice, and Janasik refused Collins' request to submit to a breath test.

The State also introduced evidence of a prior similar transaction. Officer Douglas LaCompt of the Georgia State Patrol testified that approximately nine months earlier, on the evening of February 25, 2007, he saw Janasik driving northbound on Roswell Road in Fulton County when he observed him cross the double-yellow line twice, change lanes without using his signal and then cross the white fog line on the right side of the road. LaCompt initiated a traffic stop, and the first thing he detected was a strong odor of alcoholic beverage coming from Janasik's car. When LaCompt asked Janasik for his driver's license, he handed the officer a credit card with dolphins on it. LaCompt observed that Janasik was unsteady on his

feet after he exited the vehicle, and he had slurred speech and bloodshot eyes. LaCompt asked Janasik if he would submit to the field sobriety tests, but he refused. He did not, however, indicate that he could not perform the tests due to any injury. LaCompt then placed Janasik under arrest and read him the implied consent notice; Janasik subsequently refused to submit to the officer's request for a breath test. A jury later convicted Janasik of DUI based upon the February incident.

1. Janasik first asserts that the trial court erred in admitting the similar transaction evidence without first weighing the danger of unfair prejudice. He argues that this error was compounded by the prosecution's improper "propensity" arguments stemming from this evidence. We review the trial court's decision whether to admit the similar transaction evidence for an abuse of discretion. See *Reed v. State*, 291 Ga. 10, 13-14 (3) (727 SE2d 112) (2012).

Prior to trial, the State filed a notice of its intent to present the February 2007 similar transaction evidence for purposes of "identity, motive, scheme, bent of mind, course of conduct, and/or absence of accident," and Janasik filed a motion in opposition to the State's notice. Following a hearing, which apparently was not transcribed, the trial court denied the motion. In its order, filed December 10, 2010, the trial court cited Janasik's

4

very thorough Brief, outlining the peculiarity of Georgia law, which permits the utilization of prior incidents, commonly referred to as "similars" in DUI trials. Although the material was prepared in a scholarly fashion, this Court is constrained to follow the precedent of the Georgia Supreme Court which authorizes utilization of prior convictions, because of the "similarity" of the incidents. Perhaps enactment of the revised rules of evidence in the upcoming legislative session will no longer permit this bent of mind analysis, but short of that occurrence, this Court must DENY Defendant's motions, and permit utilization of similar occurrences.

Janasik's trial took place in October 2011, and thus was subject to Georgia's evidentiary rules as they existed prior to January 1, 2013, when Georgia's new evidentiary code went into effect. See Ga. L. 2011, p. 100, § 1. Accordingly, at the time of the trial court's finding in this case, "course of conduct and bent of mind [were] appropriate purposes for which similar transaction evidence [could] be introduced." (Citations and punctuation omitted.) *Newton v. State*, 313 Ga. App. 889, 891-892 (1) (a) (723 SE2d 95) (2012). See also *Henderson v. State*, 303 Ga. App. 527, 529 (1) (693 SE2d 896) (2010); *Wade v. State*, 295 Ga. App. 45, 48 (670 SE2d 864) (2008) (" [W]e are not authorized to depart from the precedent of the Supreme Court of Georgia authorizing the bent of mind rationale for admitting similar transaction evidence . . . .") (citations omitted).

And in the absence of a transcript of the similar transaction hearing, we must presume that the State made the requisite showings for the introduction of this evidence and that, after hearing the evidence, the trial court correctly exercised its discretion in denying Janasik's motion. *Guild v. State,* 234 Ga. App. 862, 866 (4), n. 2 (508 SE2d 231) (1998) (appellate court will presume the correctness of similar transaction proceedings and resultant findings in the absence of a transcript). Thus, we must presume that the trial court properly weighed the issue of prejudice in reaching its decision. Certainly, Janasik's brief thoroughly addressed the issue , and the trial court obviously read and considered his brief. And, contrary to Janasik's argument, the trial court's proper and accurate acknowledgment that it was bound by Georgia Supreme Court precedent regarding the rationale for the introduction of such evidence does not undercut that presumption. Moreover, given the striking similarity between the two offenses and the fact that they occurred a mere nine months apart, we cannot say that the similar transaction evidence was inadmissible under the law as it existed at the time of Janasik's trial. See, e. g., *Moody v. State,* 273 Ga. App. 670, 671-672 (2) (615 SE2d 803) (2005).

Further, Janasik waived any argument of error in connection with the prosecution's "propensity" argument based on the similar transaction evidence by

failing to object to that argument at trial. *Shaw v. State*, 265 Ga. App. 451, 452 (2) (594 SE2d 393) (2004).

2. Janasik also asserts that his trial counsel was ineffective in failing to seek a limiting instruction from the Court at the time it admitted the similar transaction evidence.

Janasik's trial counsel gave his opening argument immediately prior to the introduction of the similar transaction evidence, during which he told the jury that the judge was going to give them "some instructions about how you are allowed to consider LaCompt's evidence, because that's what's called 'similar transaction evidence' that Georgia allows in." He then asked the jury to "listen to the evidence in this case. Not the one in February, which is what the State is putting [LaCompt] up first for, so you could hear that first." But he apparently did not request that the trial court give limiting instructions at that time. Nevertheless, at defense counsel's request, the trial court gave the jury a limiting instruction prior to closing argument, in which the court directed the jury that such evidence could only "be considered for the limited purpose of showing, if it does, the state of mind. For example, the knowledge or intent of the Defendant in the crimes that's charged in the case that's

now in trial." And the trial court included a similar instruction in its general charge to the jury.

> In considering Janasik's argument,

> we apply the two-prong test for determining the validity of a claim of ineffectiveness of counsel established in *Strickland v. Washington,* 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), which asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails.

*Williams v. State*, 319 Ga. App. 888, 889 (739 SE2d 4) (2013).

Although Janasik's trial counsel testified at the hearing on his motion for new trial, Janasik's motion attorney did not ask him about his failure to request contemporaneous limiting instructions. By failing to question him on the issue, "[Janasik] has not overcome the presumption that his trial counsel acted within the range of reasonable, professional conduct." (Citation omitted.) *Allen v. State*, 299 Ga. App. 201, 204 (1) (b) (683 SE2d 343) (2009). See also *Ellis v. State*, 292 Ga. 276, 287 (4) (e) (736 SE2d 412) (2013).

Moreover, Janasik has failed to demonstrate that his defense was prejudiced by counsel's omission where the jury was twice instructed on the limited purposes for which they could consider the similar transaction evidence. See *Smith v. State*, 270 Ga. 68, 70 (3) (508 SE2d 145) (1998) (counsel not ineffective in failing to request limiting instruction contemporaneously with similar transaction testimony where he requested such instruction as part of court's general charge); *Sims v. State*, 317 Ga. App. at 422-423 (1)*; Copeland v. State*, 276 Ga. App. 834, 838 (2) (b) (625 SE2d 100) (2005) (no prejudice shown where counsel failed to request contemporaneous limiting instruction).

Accordingly, Janasik failed to demonstrate that the trial court committed error in denying his motion for new trial on this ground.

3. Janasik next contends that the trial court erred in failing to dismiss Juror No. 2 for cause.

"We review a trial court's decision to strike a juror for cause under an abuse of discretion standard." (Citation omitted.) *McCoy v. State*, 285 Ga. App. 246, 248 (2) (645 SE2d 728) (2007). "A prospective juror should be dismissed when he or she "has formed an opinion on the guilt or innocence of the accused which is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based

9

upon the evidence or the court's charge upon the evidence." (Citation and punctuation omitted.) Id.

In response to the State's question, Juror No. 2 indicated that he did not think a person should drink and drive. Janasik's trial counsel then examined the juror, as follows:

Q:    So, in this case if a person says, I did have a drink, that would be too much for you to say anything other than . . . guilty; is that correct?

A:    Can you ask that again?

Q:    If the person tells the officer, I did have a drink earlier, that would be enough for you that you'd just say "guilty"?

A:    No.

Q:    When I asked the question earlier you said you had something to drink before and later drove home; is that correct?

A.    Yes.

Q:    Were you sober or too impaired to drive?

A:    I would call myself, "Sober."

Q: If you had been pulled over and still smelled of alcohol, is that enough to arrest you for DUI? Handcuff you? Take you in?

A: I would have to rely on what the officer thinks of it.

Q: So just based on the fact that you smelled of alcohol and the officer said, I'm taking you in, you feel that you are guilty just from being arrested.

A: Sure, yeah.

In its order denying Janasik's motion for new trial, the trial court stated that it considered the entirety of the juror's responses, "and frankly he sounded somewhat confused by some of the questions posed to him. At one point he responded he didn't think someone should drink and drive, but he then said he had done this in the past. He also said he would rely on the officer's testimony, but he never said that would be all he would rely on." The court concluded that despite the inconsistencies in the juror's responses, his testimony did not rise to the level of establishing that his opinions were so fixed and/or so definite that he would not consider the evidence. We agree.

11

As the trial court correctly noted, defense counsel's questions were somewhat confusing. Although the juror indicated that he did not think drinking and driving was a good idea, he conceded that he had done so himself and he believed himself to be sober at the time. And although he stated that he personally would feel he was guilty if he were arrested for drinking and driving, he never indicated that the same would apply to the defendant in this case or that he would not judge the defendant on all the evidence presented. For example, Juror No. 2 agreed with prosecutor's statement that alcohol affects different people differently and some people have a better tolerance for alcohol, making it difficult to determine whether they are under the influence. And he did not raise his hand when the trial court explained that they were looking for jurors who were impartial between the State and the defendant and asked whether he had any bias or prejudice in favor of one side or the other. Juror No. 2 did not respond positively when defense counsel asked whether anyone believed that the State should pass a blanket law prohibiting any drinking and driving. Nor did he respond positively to the question of whether anyone felt that evidence of a prior DUI meant that the person was guilty of DUI seven months later or to the question of whether anyone would be unable to decide the present case on its own merits in light of an earlier incident.

Under these circumstances, we cannot say that the juror's testimony demonstrated that his opinions were so fixed or definite that he would not be able to decide the case on the evidence presented or that the trial court abused its discretion in refusing to strike the juror for cause. See *Hornsby v. State*, 296 Ga. App. 483, 484-485 (2) (675 SE2d 502) (2009) (trial court did not abuse discretion in failing to strike jurors who knew officers involved, but otherwise gave no indication that they could not be impartial); *Kelly v. State*, 242 Ga. App. 30, 32 (2) (528 SE2d 812) (2000) (in DUI case, trial court not required to strike juror who showed great antipathy toward people who drink and drive, but otherwise indicated that she could be fair and impartial).

4. Janasik also contends that when his expert witness, Dr. Citron, failed to appear and testify at trial, the trial court erred by refusing to grant a continuance, by failing to exercise its power to compel the witness's appearance and testimony, and by denying Janasik's request for a mistrial. He argues, alternatively, that his trial counsel was ineffective in failing to present the expert's testimony after promising the jury that he would do so. We find no merit to these arguments.

13

The record indicates that Janasik's counsel informed the trial court at around 5 p.m.[2] on the first day of trial that his expert witness would not be available to testify the following day because he was scheduled to speak at an out-of-town seminar. The trial court agreed to try to accommodate the defense by allowing the witness to testify electronically if the defense attorney could meet the trial court's requirements for connectivity and a picture that the court felt "was adequate for the jury to assess his testimony." Janasik's trial counsel later testified that, at that point, he released Citron from his subpoena with the understanding that he would be available to give his testimony electronically.

The next morning defense counsel reported that the electronic set-up had been tested and it "worked great." Nevertheless, he indicated that they were still testing it because some problems existed with the wireless connection. At the hearing on the motion for new trial, however, the evidence indicated that the equipment was working properly, but the defense could not locate Dr. Citron. The trial court agreed to wait until after hearing several defense motions and holding the charge conference before ruling on the admissibility of the expert's electronic testimony. After these proceedings, which the trial court's order indicates took approximately another hour,

[2] We note that the trial court's order indicates that it was around 4:15 p.m.

14

the defense was still indicating that it was continuing to have technical problems, and the trial court announced that the defense had five minutes to resolve the issues or they would proceed to closing argument. At 10:15 a.m., the trial judge announced that because Dr. Citron was not available, she was asking the defense to rest, assuming defense counsel had no other witnesses. Janasik's counsel objected, indicating that they could not win without Dr. Citron's testimony. The trial judge replied that she could have accommodated Dr. Citron the previous day had she received timely notice of his schedule.

The trial court then directed the parties to present their closing arguments , but after the jury began deliberations, the court allowed the defense attorney to put his objections on the record. Janasik's attorney indicated that his technician arrived at 7:45 a.m. to attempt to set up the equipment, but they had some difficulty getting into the building and they continued to have technical issues. He also indicated, however, that they were never actually able to contact Dr. Citron that morning. Janasik's counsel suggested that the trial court could have continued the proceedings, compelled Dr. Citron's presence, or that it could grant a mistrial. The trial court never specifically addressed the defense's first two alternatives, but the court stated that no

15

justification existed for a mistrial in light of counsel's failure to raise the issue earlier, depriving the court of the opportunity to make accommodations.

(a) We review a trial court's decision whether to grant or deny a motion for continuance for an abuse of discretion. OCGA § 17–8–22; *Hartley v. State,* 283 Ga. App. 388, 389 (1) (641 SE2d 607) (2007). And in order to obtain a continuance based upon a witness's absence, a defendant is required under OCGA § 17-8-25 to demonstrate that

> (1) that the witness is absent; (2) that he has been subpoenaed; (3) that he does not reside more than 100 miles from the place of trial ; (4) that his testimony is material; (5) that the witness is not absent by permission of the movant; (6) that the movant expects to be able to procure the testimony of the witness at the next term of court; (7) that the continuance is not requested for purposes of delay and, (8) the facts expected to be proved by the absent witness must be stated.

(Citation and punctuation omitted.) *Bailey v. State*, 309 Ga. App. 473, 474 (710 SE2d 656) (2011). Each of these requirements "must be met before an appellate court may review the exercise of the trial court's discretion in denying a motion for continuance based upon the absence of a witness." (Citation omitted.) *Krirat v. State*, 286 Ga. App. 650, 657 (3) (649 SE2d 786) (2007). Furthermore, the trial court's "discretion is not abused unless all of the requisites of OCGA § 17–8–25 are shown and the trial

court still denied a continuance." (Citation and punctuation omitted.) *Anthony v. State*, 276 Ga. App. 107, 109 (2) (622 SE2d 450) (2005).

Janasik failed to make all of the required showings. Although Janasik's trial counsel represented at trial and testified at the motion hearing that Dr. Citron was under subpoena, we note that no evidence of this subpoena exists in the record on appeal.[3] The trial court also found no evidence of such a subpoena. In any event, Janasik's counsel conceded at the motion hearing that he released Dr. Citron from his subpoena after the first day of trial. Moreover, Jansik failed to establish Dr. Citron's place of residency or his availability by the next term of court. And although Janasik's counsel indicated that they could not win the case without his testimony and they had built their entire defense around him, he failed to provide the trial court with the facts he expected Dr. Citron's testimony to prove. He stated only that Dr. Citron's

---

[3] Janasik's brief indicates that the notice of appeal asked the trial court clerk "'not to omit anything from the record on appeal,'" but the clerk nevertheless omitted the return of service on Dr. Citron's subpoena. However, the notice of appeal actually informed the clerk that court notices and correspondence between the Court and the parties could be omitted. Janasik's appellate counsel further represents in the brief that she asked the clerk to supplement the record with the return of subpoena, but the appellate record has never been so supplemented. And Janasik's appellate counsel never filed a motion in this Court seeking to supplement the record. As appellant, Janasik bore the burden of ensuring that the appellate record was complete. *Rowell v. State*, 312 Ga. App. 559, 561 (1) (718 SE2d 890) (2011).

17

testimony "wrapped up the testimony of [the defense's other expert] and the video as well as Trooper Collins as well as the medical records that we procured for purposes of him to review [that] predated – this incident," without providing the court any indication of the content of his testimony.[4] Accordingly, Janasik failed to establish for the trial court that Dr. Citron's testimony was material. Under these circumstances, we cannot say that the trial court abused its discretion in denying the motion for continuance. *Bailey v. State*, 309 Ga. App. at 474-475.

And, pretermitting whether a defendant's failure to secure the attendance of his own witness after releasing him from a subpoena could ever provide a basis for a mistrial, for the same reasons we cannot say that the trial court abused its discretion in denying the motion for mistrial in this case. See *Eskew v. State*, 309 Ga. App. 44, 47 (3) (709 SE2d 893) (2011) (trial court's denial of a motion for mistrial reviewed for abuse of discretion). Additionally, we find that the trial court lacked authority to compel Dr. Citron's attendance once Janasik's counsel had released him from his subpoena. See generally *Schramm v. State*, 286 Ga. App. 156, 158 (2) (648 SE2d 392) (2007) (trial court cannot compel witness in absence of subpoena).

---

[4] We note that Dr. Citron apparently testified at the hearing on the motion to suppress , but that motion was considered at the same hearing addressing the similar transaction evidence, which, as noted above, was not transcribed.

18

(b) Janasik's claim of ineffective assistance of counsel on this ground similarly fails.[5] Pretermitting whether the failure by Janasik's trial counsel to secure Dr. Citron's testimony constitutes deficient performance, we find that Janasik cannot meet his burden to show that he was prejudiced by such failure in the absence of the requisite proof of what Dr. Citron's testimony would have been. "To prove the prejudice prong of *Strickland* on a claim that trial counsel failed to call a witness, a defendant must show the witness's expected testimony by presenting either live testimony of the witness, an affidavit from the witness, or a legally recognized substitute for the uncalled witness's testimony; a proffer by counsel is insufficient." (Citations and punctuation omitted.) *Benjamin v. State*, __ Ga. App. __ (1) (b) (Case No. A13A0770, decided May 23, 2013). Although at the hearing on the motion for new trial, Janasik's trial counsel described what he expected Dr. Citron's testimony to be, Dr. Citron did not testify at the motion hearing, and Janasik failed to produce an affidavit or any other legally recognized substitute for his testimony. Accordingly, Janasik failed to establish his claim of ineffective assistance of counsel on this

---

[5] Janasik asserts that the trial court never ruled on this claim, but "[a]lthough the trial court did not make explicit findings on this issue, implicit in the trial court's denial of the amended motion for new trial is a finding that [Janasik] was not denied the effective assistance of counsel." *Maddox v. State*, 218 Ga. App. 320, 322 (2) (461 SE2d 286) (1995).

ground. See *Kendrick v. State*, 290 Ga. 873, 877 (4) (725 SE2d 296) (2012) ("If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.") (citations omitted).

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*