**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 8, 2015**

# In the Court of Appeals of Georgia

A15A0902. LAFAVOR v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Daniel Lafavor on one count of speeding. On appeal, Lafavor challenges the sufficiency of the evidence supporting his conviction and further contends that the trial court erred in (1) admitting laser-speed-detection-device evidence despite the State's failure to comply with the requirements for admission of such evidence, (2) denying his motion for a continuance, (3) admitting exhibits that the State failed to disclose prior to trial, (4) violating his right to confront the witnesses against him, (5) improperly instructing the jury that its verdict could not be governed by sympathy, (6) inadequately responding to questions posed by the jury during its deliberations, and (7) admitting impeachment evidence. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on the night of July 31, 2011, a Covington police officer was parked alongside Interstate 20 and was monitoring west-bound traffic on a section of the highway where the speed limit was 65 miles per hour. At approximately 9:00 p.m., the officer observed a red Corvette approaching in the first lane and overtaking other vehicles "at a good rate of speed." Believing that the Corvette was moving much too fast and exceeding the speed limit, the officer trained a laser-speed-detection device on the vehicle and obtained a reading that it was traveling at 108 miles per hour. Consequently, the officer initiated a traffic stop, during which he determined that Lafavor was the driver and owner of the vehicle and that his wife was the only other passenger. The officer then arrested Lafavor, and another officer, whose vehicle was equipped to transport arrestees, transported Lafavor to the county jail.

Lafavor was later charged, via accusation, with one count of speeding. At Lafavor's jury trial, in which he proceeded *pro se*, the State's sole witness was the arresting officer, who testified regarding the details of the traffic stop. In addition, Lafavor and his wife testified in Lafavor's defense, and both asserted that he was not

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

2

exceeding the speed limit. Nevertheless, at the conclusion of the trial, the jury convicted Lafavor of speeding.

Subsequently, Lafavor obtained counsel and filed a motion for new trial, which the trial court denied after conducting a hearing on the matter. This appeal follows.

1. Lafavor first contends that the evidence was insufficient to support his speeding conviction. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the jury's verdict, and the appellant no longer enjoys a presumption of innocence.[2] And, of course, in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] Thus, the jury's verdict will be upheld so long as there is "some competent evidence, even

---

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

though contradicted, to support each fact necessary to make out the State's case."[4]

With these guiding principles in mind, we will now address Lafavor's specific contentions.

In order to be guilty of speeding, one need only "exceed the designated speed limit."[5] And in prosecuting someone for speeding, the State "need not prove that a driver was traveling at a precise rate of speed in order to obtain a conviction for speeding."[6] In fact, greater speeds by specified increment "affect only the punishment and are therefore not material allegations to prove the crime of speeding."[7] Furthermore, an officer's estimate of speed is "sufficient to support a conviction on a speeding violation[.]"[8]

Here, the posted speed limit on the section of I-20 where Lafavor was stopped was 65 miles per hour, and the arresting officer testified that he had been trained to

---

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[5] *Frasard v. State*, 322 Ga. App. 468, 468-69 (1) (a) (745 SE2d 716) (2013) (punctuation omitted).

[6] *Id.* at 468 (1) (a) (punctuation omitted).

[7] *Id.* at 469 (1) (a) (punctuation omitted).

[8] *Id.* (punctuation omitted).

4

visually estimate the speed of a moving vehicle within two miles per hour. Additionally, the officer recounted that when he first observed Lafavor's vehicle, it was overtaking other vehicles, and that he "believed" him "to be speeding." The officer further testified that his laser speed-detection device, in fact, indicated that Lafavor's vehicle was traveling at a rate of 108 miles per hour, thereby confirming the officer's estimate that Lafavor was indeed speeding. Accordingly, the evidence was sufficient to sustain Lafavor's speeding conviction.[9]

2. Lafavor next contends that the trial court erred in admitting the laser-speed-detection-device evidence, arguing that the State failed to comply with the requirements for admission of such evidence under OCGA § 40-14-17. This claim lacks merit.

Initially, we note that Lafavor failed to object to the introduction of the laser-speed-detection-device evidence during his trial. Nevertheless, because his trial occurred after January 1, 2013, we may review the purportedly improper admission

---

[9] *See id.* ("Because an officer's estimate of speed is sufficient to support a conviction on a speeding violation, the officer's testimony that [defendant] was traveling above the speed limit was sufficient to sustain his conviction." (punctuation omitted)); *In the Interest of J. D. S.*, 273 Ga. App. 576, 577 (615 SE2d 627) (2005) (holding that officer's testimony that defendant was traveling faster than the 65 miles per hour speed limit was sufficient to support defendant's conviction on a speeding violation).

of evidence for plain error.[10] That being said, a finding of plain error requires "a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, *i.e.*, it affected the outcome of the trial-court proceedings."[11]

Reviewing Lafavor's claim in this regard, OCGA § 40-14-17 provides that

[e]vidence of speed based on a speed detection device using the speed timing principle of laser which is of a model that has been approved by the Department of Public Safety shall be considered scientifically acceptable and reliable as a speed detection device and shall be admissible for all purposes in any court, judicial, or administrative proceedings in this state. A certified copy of the Department of Public Safety list of approved models of such laser devices shall be self-authenticating and shall be admissible for all purposes in any court, judicial, or administrative proceedings in this state.

The text of this statutory provision provides that a certified copy of the Department's "list of approved models . . . shall be self-authenticating" for adjudicatory purposes,

---

[10] *See Rembert v. State*, 324 Ga. App. 146, 152 (2) n.8 (749 SE2d 744) (2013) (noting that "Georgia's new Evidence Code, which applies to cases tried after January 1, 2013, allows a court to consider 'plain errors affecting substantial rights although such errors were not brought to the attention of the court'").

[11] *Fraser v. State*, 329 Ga. App. 1, 2 (763 SE2d 359) (2014) (punctuation omitted).

but does not dictate that "*only* such a document can supply evidence that the device was so approved."[12] Indeed, as we have recently held in this very context, "circumstantial evidence arising from the testimony of the trained and certified individual who operated the machine and performed the test is sufficient to meet the statute's authenticating procedures."[13]

Here, the arresting officer testified that he was certified to use laser-speed-detection devices and that the Department of Public Safety had approved the devices used by the Covington Police Department. The officer also provided lengthy testimony regarding his familiarity with calibrating the device and, more specifically, the fact that at the start of his shift on the night in question, he calibrated the device that he ultimately used to clock Lafavor's vehicle. Given these particular circumstances, the State sufficiently complied with the authenticating procedures under OCGA § 40-14-17.[14]

---

[12] *Frasard*, 322 Ga. App. at 472 (3) (c).

[13] *Id.* (punctuation omitted).

[14] *See id.* (holding that arresting officer's testimony as to both his training in speed detection, including the use of laser devices, and the Department of Public Safety's approval of the particular device he used, sufficiently complied with OCGA § 40-14-17).

But even if we assumed for the sake of argument that the State failed to comply with OCGA § 40-14-17, the admission of this evidence did not constitute plain error. As we noted in Division 1 *supra*, the laser-speed-detection-device evidence was not necessary because the officer's estimate that Lafavor was exceeding the speed limit was sufficient to sustain his conviction.[15] Thus, the laser-speed-detection-device evidence was merely cumulative of the officer's testimony, "and its admission did not in reasonable probability affect the outcome of the trial."[16]

3. Lafavor contends that the trial court erred in denying his request for a continuance, which he sought because the State did not provide him with the transporting officer's out-of-state address. We disagree.

At the outset, we note that the grant or denial of a continuance is "addressed to the sound legal discretion of the trial court, and the court's ruling will not be disturbed absent a clear abuse of discretion."[17] And under OCGA § 17-8-25, in order to obtain a continuance based upon a witness's absence, a defendant is required to demonstrate that

[15] *See supra* note 9.

[16] *Fraser*, 329 Ga. App. at 2 (punctuation omitted).

[17] *Brown v. State*, 304 Ga. App. 168, 172 (2) (695 SE2d 698) (2010).

8

(1) that the witness is absent; (2) that he has been subpoenaed; (3) that he does not reside more than 100 miles from the place of trial; (4) that his testimony is material; (5) that the witness is not absent by permission of the movant; (6) that the movant expects to be able to procure the testimony of the witness at the next term of court; (7) that the continuance is not requested for purposes of delay and, (8) the facts expected to be proved by the absent witness must be stated.[18]

Importantly, the trial court's discretion is not abused "unless all of the requisites of OCGA § 17-8-25 are shown and the trial court still denied a continuance."[19]

In this matter, more than ten days prior to the start of trial, the State filed its witness list, which included the officer who arrived on the scene after Lafavor was arrested and transported him to jail. Later, the State issued a witness subpoena for the officer but his address was listed as "private," despite the fact that Lafavor's discovery request sought the contact information for all the investigating officers. On the first day of trial, Lafavor requested a continuance, arguing that he had been unable to interview the transporting officer, who would provide crucial testimony. Specifically, Lafavor claimed that after placing him in the patrol vehicle, the

---

[18] *Janasik v. State*, 323 Ga. App. 545, 552-53 (4) (a) (746 SE2d 208) (2013) (punctuation omitted).

[19] *Id.* at 553 (4) (a) (punctuation omitted).

9

transporting officer asked the arresting officer if he had shown Lafavor the laser reading, and the arresting officer admitted that he had deleted the information. In response, the State explained that the transporting officer was no longer a member of the police department, that he currently lived in Ohio, and that the State did not intend to call him as a witness. Immediately thereafter, the trial court denied Lafavor's request.

On appeal, Lafavor argues that the trial court erred in denying his request for a continuance to interview the transporting officer. But Lafavor failed to meet several of the requirements delineated in OCGA § 17-8-25, including showing that the transporting officer resided within 100 miles of the place of trial and that he could procure the officer's testimony at the next term of court.[20] Given these particular circumstances, the trial court did not abuse its discretion in denying Lafavor's request for a continuance to secure the transporting officer's testimony.[21]

---

[20] *See* OCGA § 17-8-25.

[21] *See Bailey v. State*, 309 Ga. App. 473, 474-75 (710 SE2d 656) (2011) (holding that denial of defendant's request for a continuance to secure witness's attendance was not abuse of discretion given that defendant never asserted that he would be able to procure the witness's testimony during an adjournment); *Knox v. State*, 227 Ga. App. 447, 448 (489 SE2d 582) (1997) (holding that the denial of request for continuance due to absence of witness was justified by defendant's failure to satisfy requirements that witness could be procured by next term of court); *Griggs*

4. Lafavor similarly contends that the trial court erred in denying his request for a continuance because the State violated its discovery obligations and failed to disclose exculpatory evidence when it failed to provide him with the transporting officer's out-of-state address. Both of these claims are wholly without merit.

(a) Lafavor opted into reciprocal discovery,[22] and on July 10, 2012, more than a year before trial, the State disclosed its initial witness list, which consisted of only the arresting and transporting officers. The list indicated the police department's address and telephone number as contact information for both of the officers. And this information was all the State was required to disclose under OCGA § 17-16-8 (b), which provides that

> [n]othing in this Code section shall be construed to require the prosecuting attorney to furnish the home address, date of birth, or home telephone number of a witness who is a law enforcement officer. Instead, in such cases, the prosecuting attorney shall furnish to the defense attorney the law enforcement officer's current work location and work phone number.

v. State, 208 Ga. App. 768, 769-70 (2) (432 SE2d 591) (1993) (ruling that trial court did not abuse its discretion in denying continuance given that defendant could not show that witness resided within 100 miles of the place of trial).

[22] See OCGA § 17-16-1 et. seq.

11

On the first day of trial, as previously noted, Lafavor complained that the State had not provided him with contact information for the transporting officer, despite allegedly promising to do so, and therefore, he had been unable to interview the officer. The State's prosecutor responded that the transporting officer had moved to Ohio and that she did not intend to call him as a witness. Now, on appeal, Lafavor argues that his right to a fair trial was denied by the State not providing more detailed contact information for the transporting officer. But the State, acting in its role as the prosecution, has no obligation to locate defense witnesses.[23]

Moreover, a defendant asserting a discovery violation must "show harm as well as error to merit reversal of his conviction."[24] And here, even pretermitting that the State should have provided more detailed contact information for a witness it did not intend to call, the trial court allowed Lafavor to testify that the transporting officer would have corroborated his claim that the arresting officer deleted the laser-speed-detection-device's recording of the exact speed of his vehicle. Thus, the jury heard,

---

[23] *See Brooks v. State*, 285 Ga. 246, 251 (5) (674 SE2d 871) (2009) (holding that State did not engage in misconduct when it initially placed a witness on its witness list, but ultimately decided against calling the witness at trial and did not provide the defendant with sufficient information to locate the witness).

[24] *Walker v. State*, 314 Ga. App. 714, 720 (6) (b) (725 SE2d 771) (2012).

12

via uncontested hearsay, the evidence that Lafavor claimed the transporting officer would provide. Furthermore, this evidence was only relevant with regard to the reading of the laser-speed-detection device, which as noted in Division 1 was not necessary to sustain Lafavor's speeding conviction. Accordingly, Lafavor has failed to show that any alleged discovery violation caused him harm.[25]

(b) In the same enumeration of error, Lafavor also contends that the State's failure to provide detailed contact information for the transporting officer constituted a violation of *Brady v. Maryland*.[26]

It is well established that the prosecution, upon a *Brady* motion, has "the duty to produce anything that is exculpatory or impeaching."[27] But in order to prevail on a *Brady* claim, a defendant must show that

> the State possessed evidence favorable to the defendant; defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable

---

[25] *See id.* (holding that even if State committed a discovery violation, in light of other evidence, defendant failed to show that he was harmed).

[26] 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[27] *Hendricks v. State*, 290 Ga. 238, 240 (2) (719 SE2d 466) (2011) (punctuation omitted).

probability exists that the outcome of the proceeding would have been different.[28]

Here, the State did not suppress any information, but simply did not provide Lafavor with detailed contact information for a witness that he was more than aware of and which could have been discovered had he exercised reasonable diligence. Given these particular circumstances, the trial court did not err in ruling that there was no *Brady* violation.[29]

5. Lafavor also contends that the trial court erred in admitting exhibits that the State failed to disclose prior to trial. Again, we disagree.

During Lafavor's trial, the arresting officer testified regarding his certification to use the laser-speed-detection device that clocked Lafavor and further testified that the devices used by the Covington Police Department had been approved by the Department of Public Safety. Then, in conjunction with the officer's testimony, the State introduced the officer's certification, the Department of Public Safety's

---

[28] *Blackshear v. State*, 285 Ga. 619, 622 (5) (680 SE2d 850) (2009).

[29] *See Swindle v. State*, 274 Ga. 668, 670 (4) (558 SE2d 385) (2002) (holding that State's failure to provide defendant with a witness's address, which the defendant could have discovered by exercising reasonable diligence, did not constitute a *Brady* violation).

certification, and several other documents related to the laser-speed-detection-device's calibration.

Lafavor now argues that the admission of these documents constituted error because the State failed to disclose them prior to trial. But Lafavor failed to object to the documents' admission during trial and, therefore, has waived this issue on appeal.[30] Furthermore, as similarly discussed in Division 2 *supra*, the admission of these documents did not amount to plain error because the laser-speed-detection-device evidence was not necessary to sustain Lafavor's conviction. As previously discussed, the officer's estimate that Lafavor was exceeding the speed limit was sufficient to support his conviction.[31] Consequently, the laser-speed-detection-device evidence in its entirety was merely cumulative of the officer's testimony, "and its admission did not in reasonable probability affect the outcome of the trial."[32]

---

[30] *See Frasard*, 322 Ga. App. at 471 (3) (b) (holding that because defendant did not raise a proper objection to the documents and officer's log showing that the speed-detection device had been calibrated, he waived the issue on appeal).

[31] *See supra* note 9.

[32] *Fraser*, 329 Ga. App. at 2 (punctuation omitted).

6. Lafavor further argues that his right to confront the witnesses against him under the Sixth Amendment to the United States Constitution was somehow violated when the transporting officer *did not* testify at trial. This claim is a nonstarter.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[33] And in 2004, the Supreme Court of the United States clarified the original meaning and scope of the right to confrontation of one's accusers in *Crawford v. Washington*,[34] holding that "the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination."[35]

Here, Lafavor seemingly argues that his Confrontation Clause rights were violated because the transporting officer did not testify at trial. But the State made no attempt during trial to admit any out-of-court statements the transporting officer may

---

[33] U.S. Const. amend. VI; *see also* Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[34] 541 U.S. 36, 68 (V) (C) (124 SCt 1354, 158 LE2d 177) (2004).

[35] *Cuyuch v. State*, 284 Ga. 290, 291-92 (2) (667 SE2d 85) (2008) (punctuation omitted) (describing holding of *Crawford. Washington*).

16

have made. In fact, Lafavor was the only witness who testified regarding statements allegedly made by the transporting officer at the time of his arrest. Given these particular circumstances, the Confrontation Clause does not apply, and Lafavor's argument to the contrary is wholly without merit.

7. Lafavor also contends that the trial court erred in instructing the jury that its verdict was not to be governed by sympathy or prejudice, arguing, essentially, that such an instruction invaded the province of the jury. Again, we disagree.

During trial, Lafavor's wife testified that her husband travels to Augusta three to four times each week to visit his elderly mother, who suffers from dementia, and that he was returning from such a trip on the night of his arrest for speeding. And during his own testimony, Lafavor similarly stated that he was returning home after visiting his elderly mother at the time of his arrest.

Based on this testimony, the State requested that the trial court instruct the jury that it should not be governed by sympathy. And over Lafavor's objection, the court instructed the jury that "[y]our verdict should be a true verdict based upon your opinion of the evidence according to the laws given you in this charge. You are not to show favor or sympathy to one party or the other. It is your duty to consider the facts objectively without favor, affection or sympathy for either party."

17

Contrary to Lafavor's argument, this instruction "neither shifted the burden of proof nor invaded the province of the jury."[36] Indeed, the instruction properly informed the jury that "they could not disregard evidence in favor of their sympathy or prejudice."[37] Additionally, a review of the charge as a whole shows that the trial court "thoroughly and correctly charged the jury with regard to the appropriate burden of proof."[38] Accordingly, the trial court did not err by instructing the jury in this regard.[39]

8. Additionally, Lafavor contends that the trial court erred by failing to adequately respond to a question posed by the jury after it began deliberating. Yet again, we disagree.

After the jury was instructed and had begun its deliberations, it sent a note to the trial court asking "what do we do if we cannot come to a unanimous decision?" The court informed the parties that it would respond by explaining "you are asked to

---

[36] *Dyer v. State*, 287 Ga. 137, 140 (3) (695 SE2d 15) (2010); *see, e.g.*, *Heidler v. State*, 273 Ga. 54, 62 (12) (537 SE2d 44) (2000).

[37] *Dyer*, 287 Ga. at 140 (3).

[38] *Id.*

[39] *See id.* (holding that trial court did not err in instructing the jury that its verdict should not be governed by sympathy or prejudice).

continue your deliberations." The jury was then brought into the courtroom, at which point the court stated: "The response is, you are asked to continue your deliberations and reach a verdict."

On appeal, Lafavor argues that the trial court's response exceeded what it initially told the parties its response would be and that, in doing so, it improperly implied that the jury had to reach a guilty verdict. But Lafavor did not object to the court's recharge in response to the jury's question. Consequently, he failed to preserve this objection for appellate review and "is entitled to reversal only if the jury instruction constituted plain error,"[40] which will only be found if "the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[41]

Turning to Lafavor's specific claim of error, it is axiomatic that, as a general rule, "the need, breadth, and formation of additional jury instructions are left to the

---

[40] *Blake v. State*, 292 Ga. 516, 517 (2) (739 SE2d 319) (2013) (punctuation omitted); *see* OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.").

[41] *Blake*, 292 Ga. at 517 (2).

sound discretion of the trial court."[42] Thus, when the jury requests a charge or recharge on a particular point, the court "has discretion to also give or not give additional instructions."[43] And here, the court's recharge was not obviously erroneous nor did it likely affect the outcome of the trial. In fact, contrary to Lafavor's argument, the court's recharge merely indicated that the jury should continue deliberating to reach a verdict and did not imply that such a verdict had to be guilty. Furthermore, in its initial instructions, the court instructed the jury that "[w]hatever your verdict is, it must be unanimous that is, agreed to by all of you." Then, shortly thereafter, it also explained that jurors should not "surrender an honest opinion in order to be congenial or to reach a verdict solely because of the opinions of other jurors." Accordingly, reviewing the trial court's charges as a whole, we conclude that the court's recharge was not an abuse of discretion, much less plain error.[44]

---

[42] *Harrelson v. State*, 312 Ga. App. 710, 719 (4) (719 SE2d 569) (2011) (punctuation omitted).

[43] *Id.* (punctuation omitted).

[44] *See Grier v. State*, 276 Ga. App. 655, 660-61 (3) (624 SE2d 149) (2005) (holding that when read as a whole, trial court's jury charges did imply that jurors must reach a verdict one way or the other).

9. Finally, Lafavor contends that the trial court erred in admitting a past speeding conviction as impeachment evidence. Once again, we disagree.

During his testimony, Lafavor claimed that it was impossible for him to drive 108 miles per hour—the rate at which the arresting officer clocked him—because he has diabetes, which he claimed affects his ability to see far enough ahead to travel at such a speed. Immediately thereafter, the State requested a conference outside the presence of the jury, during which it requested that it be allowed to impeach Lafavor's testimony with evidence that, in 2002, he had been cited for speeding at 106 miles per hour and had pleaded guilty. Lafavor objected that such evidence was prejudicial because he ultimately pleaded guilty to a reduced speeding charge. Nevertheless, the trial court ruled that the conviction was admissible, and the State questioned Lafavor regarding the incident after the jury returned.

Lafavor now contends that the trial court erred in admitting his 2002 speeding conviction for impeachment purposes, but in doing so, he makes a different argument than that made at trial.[45] Specifically, he claims that if the trial court had engaged in

---

[45] *See Hall v. State*, 292 Ga. 701, 702 (2) (743 SE2d 6) (2013) ("In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (punctuation omitted)).

further inquiry on the issue, it would have learned that he was not diagnosed with diabetes until 2010, and thus, the earlier conviction could not impeach his trial testimony that he currently was unable to drive at the rate of speed alleged. However, Lafavor having elected to represent himself, it was his responsibility, not the trial court's, to ensure that the court was aware of his relevant medical history.[46] Indeed, contrary to what Lafavor argues on appeal, "[t]here is no constitutional requirement that the trial court take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course."[47] Accordingly, Lafavor's contention that the trial court erred in this regard lacks merit.

For all of the foregoing reasons, we affirm Lafavor's conviction.

*Judgment affirmed. Ellington, P. J., concurs. McFadden, J., concurs specially as to Division 2 and fully otherwise.*

---

[46] *See Kegler v. State*, 267 Ga. 147, 148 (4) (475 SE2d 593) (1996) (holding that it is the *pro se* defendant's responsibility, not the court's, to effectively represent himself by issuing subpoenas for witnesses).

[47] *Id.* at 148-49 (4) (*quoting McKaskle v. Wiggins*, 465 U.S. 168, 184 (V) (B) (104 SCt 944, 954 LE2d 122) (1984)).

22

A15A0902. LAFAVOR v. THE STATE.

McFADDEN, Judge, concurring specially as to Division 2 and fully otherwise.

I write separately regarding Division 2, in which the majority concludes that admitting the laser-speed-detection-device evidence was not plain error. I agree with that conclusion, but my analysis is slightly different.

The state undertook to admit that evidence through OCGA § 40-14-17, under which a copy of the list of such devices approved by the Department of Public Safety is self-authenticating proof of their scientific reliability and acceptability and sufficient foundation for admission of evidence generated by them. That list appears to have been inadvertently omitted from the exhibit to which it was to have been

attached. Neither party noticed the omission during the trial, and the state consequently had no opportunity to supply it. I would hold simply that whether or not it was error for the trial court to fail to notice it either and whether or not it was therefor error for the trial court to admit the evidence in question, it was not "obviously so" and therefore not plain error. See *Barron v. State*, __ Ga. __, (2), Case No. S15A1321, 2015 WL 5315662, at *1 (Ga. Sept. 14, 2015) (appropriate inquiry as to plain error is whether the trial court's act or omission "was error; whether this was obviously so; and whether the error likely affected the outcome of the proceedings.").