296 Ga. 471
FINAL COPY

S14A1679. REDDING v. THE STATE.

BLACKWELL, Justice.

Carlos Redding was tried by a Fulton County jury and convicted of murder, as well as two crimes involving the unlawful possession of a firearm, all in connection with the fatal shooting of Nelson Mann. Redding appeals, contending that the trial court erred when it failed to properly respond to a question from the jury, when it limited his cross-examination of a prosecution witness, and when it denied his motion to suppress evidence of certain out-of-court identifications. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Mann was killed on April 29, 2010. Redding was indicted on January 28, 2011 and charged with malice murder, two counts of felony murder, one count of aggravated assault, unlawful possession of a firearm during the commission of a felony, and unlawful possession of a firearm by a convicted felon. His trial commenced on November 29, 2011, and the jury returned its verdict three days later, finding him guilty on all counts. Redding was sentenced to imprisonment for life for malice murder, a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony, and a consecutive term of imprisonment for five years for unlawful possession of a firearm by a convicted felon. The verdict as to felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault merged with the malice murder. Redding timely filed a motion for new trial on December 8, 2011, and he amended it on November 28, 2012. The trial court denied his motion on December 7, 2012, and Redding timely filed a notice of appeal on January 3, 2013. The case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Redding's cousin Crystal previously had been in a relationship with Mann and that, according to Crystal and Redding's sister, Mann had fought with and struck both of them just a week before the shooting. Late on the morning of April 29, 2010, Crystal, Redding, and two of his friends were walking when they saw Mann and some of his friends. Crystal pointed at Mann, and Redding then took out a gun and fired multiple shots at Mann. Mann sustained two gunshot wounds, and he died as a result. Redding fled from the scene of the shooting, and after his arrest, he admitted to having been present at the shooting, but insisted that one of his friends was the shooter. Several eyewitnesses, however, identified Redding as the shooter, and no evidence was presented to show that the friend named by Redding had any motive to shoot Mann. Redding does not dispute that the evidence is sufficient to sustain his convictions, but we nevertheless have independently reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Redding was guilty of the crimes of which he was

convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. We turn now to the contention that the trial court failed to respond properly when the jury asked, "Does the defendant have to be the person who actually committed the act[,] or can he be party to a group that committed the act?" The trial court earlier had declined to charge on parties to a crime because there was no evidence to support that theory. As to the question from the jury, Redding's lawyer told the trial court that a direct, affirmative answer — that, "yes, it does have to be the defendant" — would be the most straightforward response. Redding's lawyer also proposed as an alternative that the trial court simply recharge the jury on the presumption of innocence, the burden of proof, proof beyond a reasonable doubt, and especially that every material allegation of the indictment must be proved. The trial court then decided that it would not answer the question directly, explaining that it wished to avoid influencing the jury's factual determinations. Instead, the trial court informed counsel that it intended to recharge the jury specifically that each count had to be proved as alleged in the indictment beyond a reasonable doubt and to otherwise refer the jury to the earlier charge. Neither party objected, and when both parties

represented that they had nothing further, the trial court directed the jurors to the indictment and the prior instructions, emphasizing that, for the jury to find the defendant guilty, it had to find beyond a reasonable doubt that the defendant committed the offense as charged in each particular count. In addition, the trial court specifically reminded the jury of its previous instructions on the State's burden of proof and the defendant's presumption of innocence. Once again, neither party objected, and both parties represented that they had nothing further.

Because Redding failed to object to the trial court's actual response before the jury again retired to deliberate, he did not preserve his objections under OCGA § 17-8-58, and appellate review is available only if the court's response constituted plain error affecting the substantial rights of the parties. See Guajardo v. State, 290 Ga. 172, 175 (3) (718 SE2d 292) (2011). The trial court had discretion to decline to answer the jury's question directly. "We have never held . . . that the court must engage in a question and answer session with the jury or instruct the jurors individually on how to apply the law to the facts." Kimmel v. State, 261 Ga. 332, 335 (3) (404 SE2d 436) (1991). See also Wilcox v. State, 297 Ga. App. 201, 209 (5) (677 SE2d 142) (2009). The trial court

4

avoided that problematic situation, instead directed the jurors' attention to those portions of its instructions to which Redding asked the court to refer, and further directed the jury to the specific language of the murder and aggravated assault counts of the indictment, which charged Redding with "shooting [Mann] with a handgun." See Smith v. State, 301 Ga. App. 670, 672 (1) (688 SE2d 636) (2009). Accordingly, it appears that the trial court acted within its discretion, effectively answering the jury in a way very similar to that suggested by Redding. We conclude that the court's answer to the question does not amount to plain error, as it was not obviously erroneous, nor was it likely to affect the outcome of the proceeding, especially considering the overwhelming weight of the evidence against Redding. See Guajardo, 290 Ga. at 176 (4).

3. Redding next claims that the trial court improperly prevented him from cross-examining a prosecution witness about the witness's first-offender probation status to show his bias in favor of the State. But "no evidence was ever offered or proffered to show that [the witness] actually was on probation at the time of trial. Moreover, [Redding] failed to demonstrate any connection between [the witness's] purported first offender status and his motivation to give testimony favorable to the State." Armour v. State, 290 Ga. 553, 556 (3) (722

5

SE2d 751) (2012). "Without some evidence showing the connection between [the witness's] first offender status and his desire to shade his testimony to curry favor with the State, the trial court did not abuse its discretion in prohibiting the cross-examination." Sanders v. State, 290 Ga. 445, 447 (2) (721 SE2d 834) (2012).

4. Last, Redding contends that the trial court erred when it denied his motion to suppress several out-of-court identifications obtained through the use of a photographic lineup that, he says, was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Specifically, Redding argues that his photograph had a plain white background while the other photographs had identical gray backgrounds. But "slight differences in the size, shading, or clarity of photographs used in an identification lineup will not render the lineup impermissibly suggestive." Green v. State, 291 Ga. 287, 293 (6) (728 SE2d 668) (2012) (citations and punctuation omitted). Having reviewed the photographic lineup at issue, we conclude that a lighter background in general, and the background in Redding's photograph in particular, does not without more render the lineup impermissibly suggestive. See Pinkins v. State, 300 Ga. App. 17, 21 (684 SE2d 275) (2009); Taylor v. State, 203 Ga. App. 210, 211 (2)

(416 SE2d 554) (1992). Although Redding also argues that two eyewitnesses — one of whom criticized the lineup as suggestive — either recanted or denied their previous identifications, these circumstances do not require a finding that the pretrial identification procedure was impermissibly suggestive. The failure of an eyewitness positively to identify the defendant in court does not invalidate the witness's earlier unequivocal identification. See Marshall v. State, 239 Ga. App. 850, 851 (1) (522 SE2d 273) (1999); Hatcher v. State, 175 Ga. App. 768, 769 (334 SE2d 709) (1985).

Judgment affirmed. All the Justices concur.

Decided February 2, 2015.

Murder. Fulton Superior Court. Before Judge Dempsey.

Jimmonique R. S. Rodgers, Quen L. Banks, Christopher R. Geel, for appellant.

Paul L. Howard, Jr., District Attorney, Joshua D. Morrison, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General, for appellee.