MILLER, Presiding Judge,
concurring specially.
I fully concur in the majority’s opinion in Divisions 1 (b), 2, 3, 4, 5, and 6. I write separately, however, because I disagree with the majority’s conclusion in Division 1 (a) that the photo array was not impermissibly suggestive. After a review of the record, I find that the photo array used in this case was very troubling and unduly sugges *549 tive. Accordingly, the trial court should have excluded this evidence. Nevertheless, the witness’s subsequent independent voice and in-court identification of King as the perpetrator cured the taint resulting from the impermissible photo array. I would therefore affirm King’s conviction.
The Due Process Clause protects a defendant from “the admission of evidence deriving from suggestive identification procedures.” Neil v. Biggers, 409 U. S. 188, 196 (III) (93 SCt 375, 34 LE2d 401) (1972). Thus, it is crucial that “pretrial identification procedures comport with certain minimum constitutional requirements in order to insure fairness.” Ralston v. State, 251 Ga. 682, 683 (2) (309 SE2d 135) (1983). Whether such evidence should be excluded involves a threshold inquiry into “whether the identification procedure was impermissibly suggestive.” Gravitt v. State, 239 Ga. 709, 710 (4) (239 SE2d 149) (1977).
1. The photo array.
The photo array shown to the witness in this case was, in my view, impermissibly suggestive as a matter of fact, and as a matter of law. The multiple differences between King’s photo, on the one hand, and the other five photos, on the other, immediately draw the viewer to King’s eyes and inevitably lead the viewer to conclude that one photo — King’s — was that of the suspect.
In looking at the six photos included in the array, the viewer immediately notices that King’s eyes are brighter and more distinctive. From there, one sees that the shading in the other five photos is darker. A grainy film is obvious over the other men’s photos. In all but King’s photo, the pictures were clearly cut out from another document. Additionally, in two of the images, it is nearly impossible to determine the facial features of those individuals.
In contrast, King’s photo is clear. It has a white background, without any shading or grainy filter. King’s features are pronounced. Thus, looking at the array, one’s eyes are immediately drawn to King’s photo with the “all but inevitable identification of [King] as the perpetrator.” (Citation and punctuation omitted.) Williams v. State, 275 Ga. 622,623 (2) (571 SE2d 385) (2002); see also Clark v. State, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999).
Under the relevant case law, “slight differences in the size, shading, or clarity of photographs . . . will not render the lineup impermissibly suggestive.” Reddingv. State, 296 Ga. 471, 474 (4) (769 SE2d 67) (2015). In Redding, the Court went on to conclude that, having viewed the photo array at issue, the “lighter background in general, and the background in Redding’s photograph in particular, *550 does not without more render the lineup impermissibly suggestive.”[10] (Emphasis supplied.) Id. In King’s case, there is not just a single difference, and it is the differences in combination that make the array troubling. I thus conclude that this case clearly presents the “more” that shifts a permissible photo array into one that was impermissibly suggestive and highly prejudicial. It was therefore error for the trial court to admit this photo identification into evidence.
2. Independent identification.
An “in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin.” (Citations and punctuation omitted.) Wilson v. State, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002). “The primary evil to be avoided is the substantial likelihood of irreparable misidentification.” Lindsey v. State, 182 Ga. App. 10, 14 (2) (354 SE2d 650) (1987) (citing Coleman v. Alabama, 399 U. S. 1 (90 SCt 1999, 26 LE2d 387) (1970)). There is no likelihood of irreparable misidentification here.
After the robbery, the witness told police, “[I]f I ever see him or hear his voice again I would recognize him.” He similarly later told police that, if he ever heard the robber’s voice, he would be “absolutely 100percent sure.” When later asked to listen to the voice of a suspect — whom police did not identify and whom the witness could not see — the witness identified King’s voice as that of the robber without hesitation.
Moreover, at trial, the witness identified King as the robber. When asked “have you ever been uncertain at all about your identification,” the witness immediately responded, without qualification, “No, I haven’t. You don’t forget that.” See Wilson, supra, 275 Ga. at 59 (3) (considering witnesses’ statements that they were certain of their identifications).
The witness’s certainty in identifying King in court, when viewed in light of his equally certain identification of King’s voice, shows that the in-court identification was sufficiently independent of the photo array to satisfy due process. Biggers, supra, 409 U. S. at 196 (III). Considering all of the circumstances, the suggestiveness of the photo array did not taint the subsequent, independent, in-court and voice *551 identification of King. See Coleman, supra, 399 U. S. at 4 (I). Accordingly, I would affirm King’s convictions.

 It is all the more difficult to distinguish that line between permissible and impermissible arrays because, although the case law instructs that “slight differences” do not cross that line, see Redding, supra, 296 Ga. at 474 (4), we are not privy to the images in those prior cases and thus cannot compare apples to apples. As the saying goes, “beauty is in the eye of the beholder.” Margaret Wolfe Hungerford, Molly Baum (1878). And we are not able to behold those images. Nevertheless, in my eye, the images in King’s array show more than “slight differences” and thus cross the line.