**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 8, 2017**

# In the Court of Appeals of Georgia

A16A1654. TRAN v. THE STATE.

RICKMAN, Judge.

Nam Nhu Tran was tried by a jury and convicted of two counts of armed robbery and one count each of aggravated sexual battery and possession of a firearm during the commission of a felony.[1] Following the denial of his motion for new trial, Tran appeals. He contends that the trial court erred in its response to a question from the jury and that his trial counsel was ineffective in numerous respects. For reasons that follow, we reverse.

---

[1] Tran was indicted for five counts of armed robbery, three counts of aggravated sexual battery, and one count of possession of a firearm during the commission of a felony. The trial court granted a directed verdict as to three of the armed robbery counts and two of the aggravated sexual battery counts because the State failed to present any evidence as to those counts.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that at approximately 1:00 a.m. on February 6, 2013, two men entered a karaoke club on Buford Highway, wearing surgical masks and carrying guns. A female club manager testified that the armed men forced her to lie face down on the floor and one of the men put his finger in her vagina. A male club manager testified that a man pointed a gun at him, forcing him to lie down, and took his debit card and some cash. The male manager testified that the men also took an almost full case of Johnny Walker Black Scotch and two or three bottles of Crown Royal Special Reserve. After one of the men left, the second man tried to get the male manager to open the register, but it would not open because the power was off. As soon as the second man left, the male manager went to the front door and saw a silver Acura with tinted windows pulling out of a parking space. He testified that the license plate was covered and was not visible. Neither of the managers saw the men's faces clearly.

At approximately 1:24 a.m., a DeKalb County police officer received a call about a suspect vehicle and three or four minutes later, as he was driving to the incident location, he saw a silver Acura with tinted windows. The officer followed the Acura and noticed that the driver was driving erratically. When the officer

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

activated his blue lights, the Acura stopped in a parking lot. As soon as the officer stopped his vehicle, the passenger got out of the Acura and ran. The passenger was never found. After backup arrived, the officer ordered the driver, identified as Tran, out of the Acura and placed him in handcuffs. Tran told the officer that "there was a gun" in the Acura. The gun belonged to Tran. A subsequent search of the Acura revealed a case of Black Label liquor, a bottle of Crown Royal, and various items of clothing.

A detective with the DeKalb County police department responded to the robbery call at the karaoke club. He took statements from five witnesses while he was at the scene. The male club manager described one of the suspects as an Asian male, age 20 to 30, height of 5'6" to 5'7," weight of 160 pounds, wearing jeans and a white mask, and armed with a silver gun. He described the second suspect as an Asian male, unknown description, wearing a white mask, and armed with a gun.[3] The female club manager described one of the suspects as an Asian male, age 20 to 30, height of 5'6" to 5'7," wearing a white mask and dark hat, and armed with a dark-colored handgun.

---

[3] In his 911 call, the male manager described the attackers as black men based on "the way they talk," but later changed his description based on conversations with "the guys who got robbed with me" and the fact that he never clearly saw the perpetrators' faces or their hands.

3

Tran testified at trial to the following. He is Vietnamese and is 5'5" tall and weighs about 155 pounds. On February 6, 2013, he went to a restaurant for a late dinner with friends and after eating, they decided to go to the karaoke club. He left the restaurant by himself, drove to the club, and waited outside his car for his friends to arrive. While he was waiting, a man he did not recognize pointed a gun at him and told him to get in the car and drive. The man was wearing a mask and was carrying a box and some bags that he put into Tran's car. Tran drove where he was told to go and, approximately three to four minutes later, he saw a police vehicle behind him with its blue lights illuminated. At that point, Tran stopped the car. The man took a couple of bills from the car's glove compartment that had Tran's address on them and told him not to say anything about the incident or he would kill him.

Tran testified that when the man got out of his car and ran, he was in shock and "so scared" because four or five years earlier he had been robbed at his business, a pool hall, in Clayton County. Tran testified that he reported that incident to the police and was subpoenaed to appear in court, but before he was scheduled to appear, someone placed a note on his car telling him not to show up for court. Tran told the police about the note, but they did not do anything. After that happened, he purchased a gun.

1. Tran contends that the trial court erred in its response to the following question from the jury: "If, in the case that the defendant *was* one of the robbers, but the State has not proven that he was the one who committed the sexual battery, or that he even had knowledge that it was occurring at the time, is he still party to the crime?" Before responding to the jury, the trial court stated, "I'll just tell them that's for them to decide," and asked if there were any objections to his proposed response. Tran's counsel stated that he had no objection. The trial court then told the jury, "That's for you to decide." There was no objection following the court's response to the jury. "[Tran]'s failure to object to the [court's response], despite having had the opportunity to do so, constitutes a waiver." (Citations omitted.) *Glover v. State*, 285 Ga. 461, 463 (3) (678 SE2d 476) (2009). Having failed to preserve this objection for appellate review, Tran "is entitled to reversal only if the jury instruction constituted plain error, which will only be found if the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings." (Footnotes and punctuation omitted.) *Lafavor v. State*, 334 Ga. App. 125, 134-35 (8) (778 SE2d 377) (2015).[4]

Tran contends that the trial court should have answered the jury's question with a simple "no." He argues that the court's response invited the jury to disregard the law "and left the jury free to decide Mr. Tran's guilt or innocence not on the law, but simply "up to" the jury."

As a general rule, "[a] trial court has a duty to recharge the jury on issues for which the jury requests a recharge[, but . . . ] where no such request has been made, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." (Citation and punctuation omitted.) *Leeks v. State*, 296 Ga. 515, 521 (4) (769 SE2d 296) (2015). Here, the jury did not request a recharge, and "[t]he trial court had discretion to decline to answer the jury's question directly." *Redding v. State*, 296 Ga. 471, 473 (2) (769 SE2d 67) (2015). Further, "[w]e have

_____

[4] Although Tran does not acknowledge that our review is limited to plain error, "we will review properly enumerated and argued claims of jury instruction error regardless of whether the appealing party specifically casts the alleged infirmity as 'plain error,' [but] parties should be advised that the hurdle to establishing plain error is high . . . and therefore that the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that their claims in this regard will be rejected." *State v. Kelly*, 290 Ga. 29, 32 (1) n.2 (718 SE2d 232) (2011).

6

never held . . . that the court must engage in a question and answer session with the jury or instruct the jurors individually on how to apply the law to the facts." *Kimmel v. State*, 261 Ga. 332, 335 (3) (404 SE2d 436) (1991). The trial court had already instructed the jurors on parties to a crime, following the pattern charge, as well as the burden of proof, witness credibility, direct and circumstantial evidence, intent, and the elements of aggravated sexual battery. The jurors were also told that they were bound by the law given in the court's instructions, a copy of which was provided to each juror, and that they had a duty and responsibility to apply that law to the facts of the case, which they must ascertain from all the evidence presented.[5] Reviewing the trial court's charges as a whole, we conclude that the court's response to the jury was not clearly erroneous and, contrary to Tran's assertion, did not invite the jury to disregard the law. See *Aikens v. State*, 297 Ga. 229, 231 (2) (773 SE2d 229) (2015); see also *Lafavor v. State*, 334 Ga. App. at 135 (8).[6]

---

[5] There were no objections to the charge.

[6] Because of our finding that Tran has not met the plain error criteria, we need not reach the issue of whether trial counsel's statement that the defense had no objections to the court's proposed response amounts to an affirmative waiver. See *State v. Kelly*, 290 Ga. at 34 (2) (b), n.5.

2. Tran contends that his trial counsel was ineffective for failing to object in several instances, failing to request a jury charge on his sole defense, and opening the door to damaging testimony.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct and that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689-690 (III) (A). As an appellate court, we "accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003). In this division, we address the first prong of the *Strickland* test and in Division 3 we address the second prong, looking at the combined effect of trial counsel's errors to determine whether those errors prejudiced the defense.

(a) Tran contends that his trial counsel was ineffective for failing to object to the trial court's response to the question from the jury addressed in Division 1. Because there was no plain error in the trial court's response to the jury, when considered in connection with the complete charge given by the court, Tran cannot show ineffective assistance of counsel based on his counsel's failure to object to the court's response. See *Dority v. State*, 335 Ga. App. 83, 104 (4) (g) (780 SE2d 129) (2015); see also *Thomas v. State*, 297 Ga. 750, 755 (5) (778 SE2d 168) (2015); *Hughley v. State*, 330 Ga. App. 786, 794 (4) (c) (769 SE2d 537) (2015).

(b) Tran contends that his trial counsel was ineffective for failing to request a jury instruction on coercion, his sole defense. When asked about his failure to submit any proposed jury charges, trial counsel testified:

> I used to submit jury instructions, you know, in almost all of my trials. And at this point over the last few years I've since not submitted any jury instructions for any trials, assuming that the judge follows pattern. And so I generally will ask at the beginning of the trial if the judge follows pattern. And if that's the case, I will generally will not submit any, because from my experience my charges don't come in anyway. So in long or in short, the answer would be no, I did not submit any in this and I generally don't and have not the last few years.

9

Putting aside our concerns about trial counsel's general practice with respect to jury instructions, we must determine whether counsel's failure to request an instruction on coercion constituted ineffective assistance. Pursuant to OCGA § 16-3-26, "[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." To assert a statutory affirmative defense, such as coercion, the defendant must admit all of the elements of the crime charged except intent. *Mathis v. State*, 299 Ga. App. 831, 842 (5) (684 SE2d 6) (2009).

Here, Tran denied any knowledge of or participation in the armed robbery and denied knowing the person who pointed a gun at him and told him to drive. He was never asked whether he had participated in or had any knowledge of the aggravated sexual battery. Accordingly, Tran was not entitled to a jury instruction on coercion and therefore cannot show that counsel's failure to request such a charge constituted ineffective assistance. See *Olarte v. State*, 273 Ga. App. 96, 102 (2) (d) (614 SE2d 213) (2005); see also *Boccia v. State*, 335 Ga. App. 687, 693 (1) (b) (ii) (782 SE2d 792) (2016).

(c) Tran contends that his trial counsel was ineffective for failing to object to questions that commented on his right to remain silent and his right to counsel.

On cross-examination, after Tran testified that he spoke to his girlfriend from the jail, the State asked him whether his girlfriend had asked him what had happened. He replied, "Yes, but I didn't want to say anything while I was in jail because I didn't have an attorney at the moment. . . . And before you make a call, they said they were going to record your call, so I didn't want to say anything." The following then transpired:

> STATE: I guess that's really the root of the issue. Why would you need an attorney? If you're an innocent bystander standing in a parking lot, who's been held up and roped into helping with an armed robbery, why would you need an attorney?
> TRAN: They took me in immediately and locked me up.
> STATE: Okay. And at any point did you say, hey, man, I was on the phone with my girlfriend. I was smoking a cigarette. This guy came up behind me and put a gun in my face. I did what he told me to do because I was scared.
> TRAN: He just locked me up, sir.
> STATE: Let me ask you this. Would it seem a viable option to you to explain to the police what had happened without identifying the attacker? Therefore, not putting yourself in any danger. Could you have said, hey, man, a guy came up to me, had a mask on, put a gun in my back and made me be his getaway driver?

11

At that point, Tran's trial counsel objected based on speculation. Although the trial court sustained the objection, the questioning continued:

> STATE: Did it occur to you to say something like that?
> TRAN: Not at the moment.
> STATE: Did it occur to you at any point to give any information to the police that would clear you of these terrible charges?
> TRAN: Yes, but I was scared at the moment, yes.
> STATE: You were scared?
> TRAN: Yes.
> STATE: Did you ever try to think of a way to give police information that would clear your name without exposing who actually did the crime?
> TRAN: Yes, once I had an attorney, yes.
> STATE: You did. And did you provide that information?
> TRAN: To whom?
> STATE: To the police who have locked you up for armed robbery and sexual battery?
> TRAN: No.
> STATE: You never gave them any information to clear your name?
> TRAN: No.

At the motion for new trial hearing, trial counsel testified that the information that came out on cross-examination was damaging to the defense and that more objections should have been made, but that things were going so quickly that he was

12

not able to make every objection. When asked why he did not object when the State continued the same line of questioning after the trial court had sustained his objection to it, trial counsel responded:

> the only thing I can think of is, you know, when trying cases like this or really any case, after an objection is sustained, it's almost natural to think that the next question is not going to be, you know, in violation of the evidentiary rules as far as, you know, whatever the objection may be. So I think I was just naturally assuming that the next question would be legitimate, and I couldn't get the objection in in time.

"[T]he use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U. S. 610, 619 (II) (96 SCt 2240, 49 LEd2d 91) (1976). And "although the improper references at issue in *Doyle* concerned only the defendants' post-*Miranda* silence, the prohibition extends equally to impeachment use of a defendant's post-*Miranda* invocation of the right to counsel." *Hill v. Turpin*, 135 F3d 1411, 1414 (11th Cir. 1998). Defense counsel's failure to object to such comments would amount to deficient performance. See *Hines v. State*, 277 Ga. App. 404, 408 (2) (626 SE2d 601) (2006).

To the extent that the State's questions related to Tran's silence before he received *Miranda* warnings, the Georgia Supreme Court has consistently held since 1991 that a comment upon a defendant's silence or failure to come forward will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense. *Sanders v. State*, 290 Ga. 637, 640 (4) (723 SE2d 436) (2012); *Reynolds v. State*, 285 Ga. 70, 71-72 (673 SE2d 854) (2009); *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), recognized as overruled on other grounds in *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999).[7] Accordingly, "it would be improper for the prosecution to comment upon a

---

[7] We note that it is unclear whether the bright-line evidentiary rule enunciated in *Mallory* remains applicable because *Mallory* was based on former OCGA § 24-3-36 ("[a]cquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission") and the Supreme Court of Georgia has expressed no opinion about the continuing validity of *Mallory*'s evidentiary ruling under the new Evidence Code. See *Kennebrew v. State*, 299 Ga. 864, 872 (2) (a) (2), n.4 (792 SE2d 695) (2016). This case was tried in February 2015, and therefore Georgia's new Evidence Code, effective for trials conducted on or after January 1, 2013, was applicable. For now, we continue to follow the precedent established by the Supreme Court of Georgia on this issue. See Ga. Const. art. VI, § 6, ¶ VI (The decisions of the Supreme Court shall bind all other courts as precedents). We also note that Eleventh Circuit cases interpreting Federal Rule of Evidence 801 (d) (2) (B), the federal counterpart to OCGA § 24-8-801 (d) (2) (B), have held that the failure to respond to a statement that, under the circumstances, an innocent defendant would normally be induced to respond, may constitute an adoptive admission, if "there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." See *United*

14

criminal defendant's silence or failure to come forward even when he takes the witness stand." *Doyle v. State*, 291 Ga. 729, 733 (3) (733 SE2d 290) (2012); see also *Tucker v. State*, 228 Ga. App. 321, 324 (1) (b) (491 SE2d 420) (1997) (fact that defendant invoked his rights to counsel and silence should not have been admissible). And defense counsel's failure to object to such comments would amount to deficient performance. *Dumas v. State*, 337 Ga. App. 124, 127 (1) (786 SE2d 508) (2016).

Under either scenario, Tran's counsel opened the door to allow the State to pursue this line of questioning by asking Tran on direct examination whether his prior encounter with the police had "anything to do with why you may not have said anything to the police at this point?" See *Burney v. State*, 244 Ga. 33, 39 (4) (257 SE2d 543) (1979); see also *Doyle*, 291 Ga. at 733 (3) (where "defendant opens the door to this line of questioning during direct examination, the prosecution has every right to pursue a thorough and sifting examination and to comment upon it during closing argument"). Under the circumstances, any objection to the prosecution's comment on Tran's silence would have been properly overruled. "Because the failure to make a meritless objection cannot constitute ineffective assistance, we conclude

<hr>

*States v. Jenkins*, 779 F2d 606, 612 (11th Cir. 1986), citing *United States v. Carter*, 760 F2d 1568, 1579 (VII) (A) (11th Cir. 1985).

that trial counsel was not ineffective for failing to object to the comment upon [Tran]'s silence." (Citation omitted.) *Doyle*, 291 Ga. at 733 (3); see *Fullwood v. State*, 304 Ga. App. 341, 343 (3) (696 SE2d 367) (2010).

(d) Tran contends that his trial counsel was ineffective for failing to object to hearsay. The State called a Clayton County police officer as a rebuttal witness and he testified that, at the prosecutor's request, he had checked Clayton County's database and found no record of Tran being a victim of a crime in Clayton County. The officer also testified that he checked with the City of Riverdale and they did not have any record in their database of Tran being a crime victim and that they had specifically checked the only Clayton County pool hall within the city limits and found no history of Tran being a victim there. At the motion for new trial hearing, trial counsel testified that the officer's testimony hurt Tran and that he should have objected to it, but he did not recall whether he considered objecting.

(i) The officer's testimony about his search of the Clayton County database was admissible to prove the absence of a public record or entry under OCGA § 24-8-803 (10), which provides that the following shall not be excluded by the hearsay rule, even though the declarant is available as a witness:

To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office, evidence in the form of a certification in accordance with Code Section 24-9-902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry[.]

The officer testified that he helps to maintain the records of crimes that occur in Clayton County and that he regularly accesses the database to get information about victims and defendants. He further testified that he checked the database using several versions of Tran's name, as shown on the criminal history report, as well as Tran's birth date and his driver's license number, but found no record of him being a victim of a crime in Clayton County. Based on the language of OCGA § 24-8-803 (10) and guidance from federal courts construing a very similar statute, Federal Rule of Evidence 803 (10), the officer's testimony about the Clayton County records fell within the hearsay exception.[8] See *United States v. Parker*, 761 F3d 986, 992 (III)

---

[8] It does not appear that the Georgia appellate courts have previously applied OCGA § 24-8-803 (10). Because OCGA § 24-8-803 mirrors Rule 803 of the Federal Rules of Evidence, we may look to federal case law for guidance in interpreting our statute. See *Ciras, LLC v. Hydrajet Technology, LLC*, 333 Ga. App. 498, 500 (773 SE2d 800) (2015).

(9th Cir. 2014) (Rule 803 (10) does not specify that the testimony must be from the custodian of records); *United States v. Valdez-Maltos*, 443 F3d 910, 911 (5th Cir. 2006) (agent not required to specifically testify that a "diligent search failed to disclose the record" as long as the testimony and the relevant circumstances reflected an adequate search). Because a hearsay objection to this testimony would have been fruitless, Tran's claim of ineffective assistance in this regard is without merit. See *White v. State*, 283 Ga. 566, 569-570 (4) (662 SE2d 131) (2008).

(ii) With respect to the City of Riverdale records, however, the officer's testimony was not admissible to show the absence of a public record or entry. The officer did not testify that he had any knowledge of the City of Riverdale database or provide any information about who conducted the search or how it was conducted. "In failing to raise an objection to this inadmissible hearsay, the performance of [Tran]'s trial counsel fell below an objective standard of reasonableness under the first prong of *Strickland*." (Citations omitted.) *Forde v. State*, 289 Ga. App. 805, 808-809 (1) (658 SE2d 410) (2008).

(e) Tran contends that his trial counsel was ineffective for failing to object to questions from the State that improperly impeached his testimony. During the State's cross-examination of Tran, the prosecutor asked him about the threatening note he

18

had received on his car after his business had been robbed and then offered, "would it surprise you that we had a Clayton County investigator run your name, and your name as listed here, Nam Nhu Tran, appears nowhere in any crime report ever in Clayton County; does that surprise you?" And later in the cross-examination, the following transpired:

> STATE: My understanding is that you had two interactions with the court system; is that correct? You reported it the first time you called and reported it?
> TRAN: Yes.
> STATE: Which we can't find a record. . . .

At the motion for new trial hearing, trial counsel agreed that it would have been helpful to keep these questions out and that he might have considered objecting, but it might be that things were going too fast for him to object.

"A witness may be impeached by disproving the facts testified to by the witness." OCGA § 24-6-621. And if an accused in a criminal proceeding chooses to testify, he or she shall be sworn as any other witness and, with certain exceptions, may be examined and cross-examined as any other witness. OCGA § 24-5-506 (b). It is improper, however, to confront or attempt to impeach a witness with facts that are not within his personal knowledge. See *Cowards v. State*, 266 Ga. 191, 194 (3)

19

(a) (465 SE2d 677) (1996) (improper to cross-examine police officer regarding facts not personally known to the officer, but contained in the case investigation file). The prosecutor's impeachment of Tran with a search performed by a Clayton County investigator of which Tran had no knowledge was therefore improper. And trial counsel's failure to object to the improper questioning constituted deficient performance. See *Ward v. State*, 304 Ga. App. 517, 527 (5) (a) (696 SE2d 471) (2010) (failing to object to hearsay statement alone was deficient performance).

(f) Tran contends that his trial counsel was ineffective when he opened the door to damaging testimony that was directly contradictory to Tran's testimony.

While cross-examining the DeKalb County detective who searched Tran's vehicle, trial counsel asked if the detective had been provided an opportunity to interrogate Tran. The following then transpired:

> DETECTIVE: I did. We actually spoke twice. The first time we talked, he didn't want to talk. But then the second time he was going to his probable cause hearing or his preliminary hearing. And he had a different lawyer before you at the time and he wanted to talk to us then.
> COUNSEL: Is this when his bond was going on?
> DETECTIVE: No, it wasn't his bond. It was a preliminary hearing.
> COUNSEL: Okay.
> DETECTIVE: And he wanted to talk to us then.
> COUNSEL: And did he talk to you?

DETECTIVE: He did. His lawyer told us that he wanted to speak to us and give us the actual person that was in the car that night. But he didn't - - he basically retracted his statement at some point and said he didn't want to talk anymore because he feared for his family getting killed.

COUNSEL: All right. So the first time you confronted him, he said I don't want to say anything, correct?

DETECTIVE: Correct.

COUNSEL: The second time he said, okay, I might be able to tell you a little bit more about kind of who was in the car or whatnot, but then said, you know what, I'm just afraid for my life at this point, correct?

DETECTIVE: Correct.

On re-direct, the State asked the detective, "Without speculating, what information was indicated to you the defendant could provide?" Trial counsel objected based on hearsay, attorney-client privilege, and pretrial negotiations. The trial court overruled the objection, ruling that trial counsel had "opened the door," and the detective testified that he understood that Tran was going to tell him who was in the car with him that night and also provide details about the crime that was committed. The detective further testified that he got the impression that Tran was familiar with the person who was in the car with him.

At the motion for new trial hearing, trial counsel testified that he does not recall why he introduced the testimony if he thought it was objectionable. He further stated:

> I think what ended up happening was when I questioned the investigator about what was said during the investigation, I was assuming that he was going to give me information that I knew he was going to say. And unfortunately he said something different. And I didn't anticipate what he was going to say. And so as it went through, it was damaging to Mr. Tran's case. And I believe the only way – and, again, I'm just almost internally speculating because I can't remember everything play by play as to why I did it, but I'm thinking, just knowing myself, I objected further to try to cut it off because it's already done too much damage at that point.

Trial counsel "expected the detective to say that Nam Tran was supposed to - - he knows the individuals potentially that were involved and he's just scared." Trial counsel acknowledged that the detective's testimony contradicted Tran's testimony that he did not know the person who got in his car that night and that he did not offer to provide the detective with information about that person.

We recognize that "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel. (Citations and punctuation omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003). But here, to the extent trial counsel may have pursued this line of questioning

22

based upon trial strategy, we find that it was not a reasonable decision a competent attorney would have made when the defense theory was that Tran was a victim and did not know the man who pointed a gun at him and forced him to drive. See *Cabrera v. State*, 303 Ga. App. 646, 652 (2) (694 SE2d 720) (2010); see generally *Dority v. State*, 335 Ga. App. at 100 (4) (d) (i).

3. We now determine if trial counsel's deficiencies prejudiced the defense, and in doing so, we must consider the combined effect of all of counsel's errors. See *Schofield v. Holsey*, 281 Ga. 809, 811, n.1 (642 SE2d 56) (2007). The relevant question "[w]hen a defendant challenges a conviction is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U. S. 668 at 695 (III) (B). "In making this determination, [we] must consider the totality of the evidence before the judge or jury []," Id., reviewing the record de novo and weighing the evidence as we expect reasonable jurors would have done. See *Woodard v. State*, 296 Ga. 803, 810 (3) (b), n.5 (771 SE2d 362) (2015). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U. S. at 695-696 (III) (B); see *State v. Crapp*, 317 Ga. App. 744, 748 (2) (732 SE2d 806) (2012) ("In close cases, where the evidence

23

presented by the state is thin, mistakes made by trial counsel take on greater significance.") (citations and punctuation omitted).

Here, we consider trial counsel's errors in the context of a case where the jury heard the prosecutor essentially testify that Tran would not need an attorney if he was an innocent bystander and then question Tran at length about why he never gave the police information that would have cleared him of these charges. Trial counsel's errors introduced evidence into the record that directly contradicted Tran's trial testimony and allowed the admission of other evidence that further challenged Tran's credibility, the combined effect of which was to severely undercut the defense's case. And all of this occurred in a case where the evidence of guilt was not overwhelming.

Under these circumstances, we conclude that Tran has shown the required prejudice to prevail on his ineffective assistance claim. See *Kennebrew v. State*, 299 Ga. 864, 873-74 (2) (b) (792 SE2d 695) (2016); *Fisher v. State*, 299 Ga. 478, 486 (2) (b) (788 SE2d 757) (2016). Tran's convictions must therefore be reversed. Because the evidence was sufficient to support the verdict, he can be retried. See *Kennebrew*, 299 Ga. at 874 (2) (c).

*Judgment reversed. Barnes, P. J., and Self, J., concur.*

24