**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J. and SELF, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 4, 2017**

# In the Court of Appeals of Georgia

A17A0668. BRADLEY v. THE STATE.                    SE-020C

S℮ʟꜰ, Judge.

Following a jury trial, Shelton Bradley was found guilty of aggravated child molestation, rape, and incest for sexually abusing his 15-year-old stepdaughter. Bradley appeals the denial of his motion for new trial, contending that the trial court erred by not answering a question from the jury and by commenting on the credibility of the victim. He also alleges ineffective assistance of counsel. For the reasons set forth below, we affirm Bradley's convictions but remand for his claim that counsel was ineffective for failing to present evidence that DNA recovered from the victim was male DNA that did not match Bradley.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979), the evidence adduced at trial

shows that on the evening of December 10, 2007, Q. H. was watching television in the den of her family's home when Bradley took her into the laundry room and asked if he could touch her. When Q. H. refused, Bradley pulled down her pants and licked her vagina. Q. H. ran to the bedroom she shared with her sister and locked the door. Bradley knocked on the door and told Q. H. to come out because he wanted to talk to her. When Q. H. left the bedroom, Bradley took her into the den where he forced her to have sex with him. Following the incident, Bradley took Q. H. into the bathroom, at which point Bradley removed the condom he had used and put it in the sink. Bradley told Q. H. that if she said anything, he would hurt her mother.

Q. H.'s brother helped her escape with her sister through a bedroom window and the two girls ran to a neighbor's house. The neighbor testified that Q. H. and her sister came into her house screaming and crying and told her that Bradley had sex with Q. H. Q. H. also told the neighbor that Bradley left a condom in the bathroom sink. The neighbor called the police. A physical examination conducted at The Haven Rape Crisis Center showed an abrasion of the labia consistent with friction, such as forced sexual intercourse.

Officers arrested Bradley that night, and during a walk-through of the home, a detective discovered a condom in the sink, a condom wrapper on the couch in the

2

den, and a tissue with blood on it in the laundry room. At trial, Q. H. testified that she lied about the entire incident to get Bradley out of the house because he was strict and would argue with her mother. When asked why she did not recant her allegation sooner, Q. H. testified that she was told that if she changed her story she would be prosecuted.

1. Bradley complains that the trial court erred in not answering a question from the jury about whether "unconsented" oral sex constitutes rape. In response, the trial court stated, "I cannot – or none of us can enter into a general discussion with [you] concerning these issues." The trial court then recharged the jury on the definitions of rape and aggravated child molestation as follows:

> A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of a female sex organ with a male sex organ. The law of Georgia provides that a person not married to the defendant under the age of 16 is legally incapable of giving consent to sexual intercourse. This means such act would be against the will of the victim. . . .

> A person commits the offense of aggravated child molestation when that person does an immoral or indecent act to a child less than 16 years of age with the intent to arouse or satisfy the sexual desires of the person and the act involves the act of sodomy. The act of sodomy is defined as

3

performing or submitting to a sexual act involving the sex organs of one and the mouth or anus of another. The State must also prove beyond a reasonable doubt that the child was under the age of 16 at the time of any such act.

A juror asked the trial court to read the rape charge one more time and the court acquiesced. The jury then asked if there is a difference between statutory rape and rape to which the trial court responded: "Legally there is of the definition, but [you] are not concerned with statutory rape. That's not one of the issues for [you] to consider in this case." Bradley did not object.

> Initially, it is important to note that [Bradley] did not object to any portion of the trial court's jury charges, and under OCGA § 17-8-58, "any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." And the failure to so object precludes appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error. . . .

(Citations, punctuation and footnotes omitted.) *Wheeler v. State*, 327 Ga. App. 313, 318 (3) (758 SE2d 840) (2014). "[P]lain error . . . will only be found if the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity, or

4

public reputation of judicial proceedings." (Citation and punctuation omitted.) *Tran v. State*, 340 Ga. App. 546, 548 (1) (798 SE2d 71) (2017). Because Bradley failed to object, our review is limited to whether the trial court's response constituted plain error. See *Redding v. State*, 296 Ga. 471, 473 (2) (769 SE2d 67) (2015).

Bradley contends the exchange between the trial court and the jury proves the jury was confused about the rape charge and likely convicted Bradley of rape based on conduct that did not constitute rape. He further argues that the trial court committed plain error by not answering the jury's question with a simple "no." "The trial court had discretion to decline to answer the jury's question directly. We have never held that the court must engage in a question and answer session with the jury or instruct the jurors individually on how to apply the law to the facts." (Punctuation omitted.) *Redding*, 296 Ga. at 473 (2). In this case, the trial court sought to avoid any "problematic situation" by recharging the jury on rape *and* aggravated child molestation, which effectively answered the question posed. See id. The trial court's recharge specifically instructed the jury that rape involves the penetration of a female sex organ with a male sex organ and that aggravated child molestation involves the sex organs of one and the mouth or anus of another. We conclude that the trial court's decision to answer the jury's question by recharging on rape and aggravated child

5

molestation does not amount to plain error, was not obviously erroneous, and likely did not affect the outcome of the proceeding.

2. Bradley contends that the trial court violated his due process rights and OCGA § 17-8-57 by commenting on Q. H.'s credibility and expressing its opinion as to Bradley's guilt. At the close of the neighbor's testimony, the following colloquy occurred between the trial court and the neighbor:

> THE COURT: Let me ask a question. We're trying to arrive at the – reach the truth in this case. Is this the first – you said a minute ago that you were not that – I'm rephrasing, okay? This is not exactly what you said, but I took it that you were not that close or friendly with, or that well acquainted with the people, or the girls, is that right?
> [NEIGHBOR]: Right, I just knew them because of my kids. My girls hung with their daughters.
> THE COURT: Had you ever seen them crying or upset before –
> [NEIGHBOR]: No, sir.
> THE COURT: – this time? Well, did anybody say why the brother didn't go with them?
> [NEIGHBOR]: No, sir.

Bradley did not object.

OCGA § 17-8-57 was amended effective July 1, 2015. While the former version of OCGA § 17-8-57 was in effect at the time of Bradley's trial, the amended version applies. See *Quiller v. State*, 338 Ga. App. 206, 207-209 (789 SE2d 391)

6

(2016) (amendment to OCGA § 17-8-57 entitled to retroactive effect). As amended, OCGA § 17-8-57 provides:

(a) (1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties. Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

(c) Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.

"The purpose of this limitation at least in part is to prevent the jury from being influenced by any disclosure of the judge's opinion regarding a witness's credibility." *Craft v. State*, 274 Ga. App. 410, 411 (1) (618 SE2d 104) (2005). However, "[i]t is well settled that a trial court may propound a clarifying question in order to develop the truth of a case" or to verify witness testimony. *Littlejohn v. State*, 320 Ga. App. 197, 203 (2) (739 SE2d 682) (2013). See *Bush v. State*, 317 Ga. App. 439, 442 (2) (731 SE2d 121) (2012).

Bradley did not object at trial to the court's question and did not assert this alleged error in his motion for a new trial. "[T]he failure to object to the error at trial precludes appellate review unless such violation constituted plain error." *Quiller*, supra, 338 Ga. App. at 208. We do not find that the trial court's question constituted plain error requiring us to reverse. The trial court's questioning of the neighbor was asked for the purpose of developing the truth of the case. The court did not express or intimate an opinion as to proof or as to guilt, or bolster the credibility of the neighbor or victim. Compare *Craft v. State*, 274 Ga. App. 410, 412 (1) (618 SE2d 104) (2005). Additionally, shortly before the trial court posed its questions, defense counsel also asked the neighbor if she was well-acquainted with the victim and her sister and the neighbor said "[N]o." The intent of the trial court's question was to

clarify the neighbor's familiarity with the girls and her previous interactions with the girls. There was no violation of OCGA § 17-8-57 or Bradley's due process rights. See *Finley v. State*, 286 Ga. 47, 51 (9) (a) (685 SE2d 258) (2009) (trial court did not violate OCGA § 17-8-57 by questioning witness regarding defendant's whereabouts immediately after shooting and his behavior towards her at the scene). Compare *Callaham v. State*, 305 Ga. App. 626, 628 (1) (700 SE2d 624) (2010) (violation of statute where trial court asked defendant if neighbor who implicated him was related to anybody; question clearly intimated court's opinion that neighbor's testimony was believable because he was an independent witness unrelated to any of the parties).

3. Finally, Bradley contends that he received ineffective assistance of trial counsel in four ways and that his claim should be remanded to the trial court for consideration.

> Under the well-established standards set out in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), to show a denial of effective assistance, a defendant must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. To prove that the performance of his lawyer was deficient, a defendant must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing

9

professional norms. The failure to make a futile motion does not constitute ineffective assistance.

(Citation and punctuation omitted.) *Lane v. State*, 324 Ga. App. 303, 310 (4) (750 SE2d 381) (2013).

As a threshold matter, we must address whether Bradley has waived appellate consideration of this claim for failing to raise it in his motion for new trial. Bradley's trial counsel represented him both at trial and at the hearing on his motion for new trial and did not raise this issue. In several post-hearing pro se documents seeking dismissal of trial counsel and appointment of appellate counsel, Bradley raised the issue for the first time and asked for remand.[1] Given these circumstances, we find that Bradley asserted his claim of ineffective assistance of trial counsel at the earliest practicable moment.

---

[1] We note that there has been considerable delay in this case since Bradley's conviction. Bradley was convicted on June 3, 2009. His sentence was entered on June 3, 2009. Trial counsel filed a motion for new trial on June 17, 2009, and an amendment to that motion on May 10, 2011. Following a hearing on May 10, 2011, the trial court denied the motion for new trial. Trial counsel filed a notice of appeal on May 20, 2011. Bradley filed the aforementioned pro se documents on July 8, 2011. On August 19, 2013, appellate counsel filed an entry of appearance. Appellate counsel filed an amended motion for new trial on May 16, 2016. The case was docketed in this court on November 21, 2016.

Next, we must consider Bradley's request to remand for a hearing. Generally, we remand to the trial court claims of ineffective assistance of counsel raised for the first time on appeal. *Hunt v. State*, 247 Ga. App. 464, 469 (6) (542 SE2d 591) (2000). However, "[r]emand is not mandated . . . if we can determine from the record that [Bradley] cannot satisfy the two-prong test set forth in *Strickland v. Washington*." (Citation and punctuation omitted.) *Godfrey v. State*, 274 Ga. App. 237, 241 (2) (617 SE2d 213) (2005). The record here is sufficient to allow us to consider Bradley's first three enumerated errors in this regard, but not his fourth enumerated error. Accordingly, we remand the case to the trial court solely for a determination of whether trial counsel was ineffective for failing to present evidence that DNA recovered from Q. H. was male DNA that did not match Bradley. We discuss the remaining three enumerated errors below.

(a) Bradley contends that trial counsel was ineffective for failing to object when the State, during re-direct examination of Q. H., read a lengthy letter written by Q. H. and her mother and signed by Q. H. a month after the incident, in which they explained that they were hurt by someone they love, but chose to forgive and not feel resentment. According to Bradley, "the letter contained numerous references to irrelevant and prejudicial matters" and the biblical references had the effect of

11

bolstering the witness's credibility. During questioning, Q. H. acknowledged that she signed the letter. Q. H. did not deny the incident in the letter and admitted that she helped her mother write the letter. The letter outlines four steps they took to deal with the incident, including (1) prayer and forgiveness; (2) surrender feelings of anger "at him"; (3) lay down all claims of retribution and "choose to pardon him" because they "still love him"; and (4) pursue counseling for him over prison and require him "to go to the jails and prisons and minister to them about this." The letter proclaims the strength and love of God and how that strength and love has helped to heal the family. Bradley claims the letter is irrelevant and prejudicial and had no bearing on the issue of guilt or innocence.

Bradley's defense at trial was that Q. H. made up the accusation because she wanted him out of the house. During cross-examination, defense counsel questioned Q. H. about her objective in making the accusation and why she recanted; stressed how important it was for her to tell the truth; and implied that Q. H. went along with the State's version of events because she felt threatened by the sheriff's department and the district attorney's office. Defense counsel also questioned Q. H. about how she and her siblings would often play with condoms that belonged to her brother by making them into water balloons and throwing them at each other.

12

Because Q. H. claimed at trial that she had made up the accusation, the jury's ultimate determination was whether to believe her initial accusation or to believe her subsequent recantation. After Q. H. denied during direct and cross examinations that Bradley sexually abused and raped her, the State introduced the letter and questioned her about it in order to show that Q. H. still believed Bradley was guilty one month after the incident. In *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), the Supreme Court of Georgia held that a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible both to impeach the witness and as substantive evidence. Id. at 862. See also former OCGA § 24-9-83.[2] Because the letter was admissible as a prior inconsistent statement, counsel cannot be ineffective for failing to object to its admission. See, e.g., *Riddick v. State*, 320 Ga. App. 500, 502-503 (3) (740 SE2d 244) (2013) (where child was reluctant to testify at trial about father's molestation of her, child's prior written statement to the police detailing molestation was admissible at trial); *Wheeler v. State*, 281 Ga. App. 158, 159-160 (2) (635 SE2d 415) (2006) (letter to attorney used as prior inconsistent statement).

---

[2] OCGA § 24-9-83 was in effect at the time of Bradley's trial. It was repealed effective January 1, 2013, and is now codified at OCGA § 24-6-613 (b).

13

(b) Bradley next contends that trial counsel was deficient for failing to object when the State asked Q. H. whether Bradley attended counseling because of the incident. During re-direct questioning of Q. H. about the letter, the following colloquy transpired between the State and Q. H.:

[STATE]: You didn't deny it happened, did you?
[Q. H.]: Not at the time.
[STATE]: In fact, you thought give him a second chance, let him go get some counseling is what you thought, right?
[Q. H.]: Yeah.
[STATE]: And if he didn't do this, he wouldn't need any counseling, would he?
[Q. H.]: No.
[STATE]: But on the 20th of January, about a month [and] ten days after it happened, then at that time you were wanting him to get counseling, but you wanted to forgive him, is that correct?
[Q. H.]: Huh?
[STATE]: I said about a month [and] ten days after this happened, at that time you wanted him to get counseling, but you wanted to forgive him, is that – . . . You wanted him to be in counseling, is that correct?
[Q. H.]: Yeah.

As discussed in Division 3 (a), the letter was admissible as a prior inconsistent statement. Accordingly, counsel cannot be ineffective for failing to object to the State questioning Q. H. about its contents.

(c) Bradley further claims that trial counsel was deficient for failing to object when the lead detective testified that ultraviolet light will only show semen or blood.

14

Bradley asserts that the detective testified about the ultraviolet light and its findings "without having first been qualified as an expert and without testimony that the [detective] was competent to testify regarding the matter."

"To qualify as an expert, generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status." (Citations and punctuation omitted.) *Billings v. State*, 293 Ga. 99, 104 (5) (745 SE2d 583) (2013). At trial, defense counsel asked the detective whether he had taken a course to learn how to use the ultraviolet light. He responded, "Oh, I've been through crime scene processing courses; I've [taken] advanced training in different areas of crime scene processing, photographing, blood spatter pattern analysis, and so forth." He further testified that he had a "16 hour block . . . of training" on the ultraviolet light. The detective acknowledged that substances other than blood and semen – such as petroleum jelly – will glow under ultraviolet light, but that the substance on the tissue found in the bathroom was red and from an unknown source, either human or animal. Defense counsel then engaged in a thorough cross-examination of the detective regarding the use and reliability of ultraviolet light on other substances. Although the State did not prove the detective's

15

qualifications before asking him about the ultraviolet light findings, defense counsel secured such testimony during cross examination and then proceeded to extensively challenge the detective about his findings. It follows that any objection raised by Bradley's counsel to the detective's qualifications would have been futile, and therefore cannot serve as the basis for a claim of ineffective assistance. See *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004) (where a witness's qualifications are established, he does not have to be formally tendered and accepted as an expert in order to give expert opinion testimony).

(d) As noted above, we remand for a hearing Bradley's claim that trial counsel was ineffective for failing to present evidence that the DNA recovered from Q. H. was male DNA that did not match Bradley.

*Judgment affirmed and case remanded with direction. Dillard, C. J., and Ray, P. J., concur.*

16